BUR, and wife, Plaintiffs-Appellants, v. SCHWARTEN, and others, Defendants-Respondents.

*No. 75-458. Submitted on briefs January 5, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 721.)

For appellants the cause was submitted on the briefs of *Nicholas Bur* and *Janet E. Bur*, pro per.

For respondents the cause was submitted on the brief of *Samuel J. Recht* and *Quarles & Brady* of Milwaukee.

DAY, J. This is an appeal from a judgment of the Milwaukee County Circuit Court dismissing on its merits the action of the plaintiffs-appellants, Nicholas and Janet Bur (hereafter plaintiffs). The plaintiffs brought an action for injunctive relief pursuant to sec. 62.23 (8), Stats. (1975).[1] The complaint alleged that the defend-

---

[1] Sec. 62.23 (8), Stats. (1975) provides in pertinent part as follows,

ants-respondents, Curtis J. Schwarten, Kenneth C. Kurtz and Manuel R. Mendez (hereafter defendants) violated the Whitefish Bay Zoning Code by building a condominium apartment building too close to the plaintiffs' lot line. The trial court found there was no violation of the ordinance and dismissed the plaintiffs' action on its merits.

The principal issue involved is whether or not the defendants violated sec. 16.08 (1) (d) (2) of the Whitefish Bay Zoning Code with respect to setback distances from the plaintiffs' property. The plaintiffs also raised other issues which will be discussed in the opinion.

Plaintiffs own the residence located at 5663 North Consaul Place, Whitefish Bay and had owned the property for approximately eleven years at the time that this action was commenced. The defendants constructed an L-shaped condominium apartment building on the adjacent property, which was purchased from the Village of Whitefish Bay. The defendants constructed the building in accordance with plans approved by the village. The plans left a side yard between the building and the plaintiffs' property of seven and one-half feet on the southern portion of plaintiffs' property and along the western boundary of plaintiffs' property.

". . . In case any building or structure is or is proposed to be erected, constructed or reconstructed, or any land is or is proposed to be used in violation of this section or regulations adopted pursuant thereto, the building inspector or the city attorney or any adjacent or neighboring property owner who would be specially damaged by such violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement or any other appropriate action or proceeding to prevent or enjoin or abate or remove such unlawful erection, construction or reconstruction."

The following is a diagram of the properties involved.

The defendants' building has a vehicle entrance on East Beaumont Avenue and a pedestrian entrance with mail delivery, lobby and elevator on Consaul Place. The Village of Whitefish Bay's "front setback" and "side setback" maps indicate that the front setback on the defendants' property is located on East Beaumont

Avenue and the side setback is located on North Consaul Place.

The defendants' building is L-shaped. It is located at least seven and one-half feet away from plaintiffs' west boundary line and south boundary line and defendants' west boundary line. The rear of the defendants' property is adjacent to an alley and the building is located ten feet from the alley. There is more than a twenty-five foot setback from North Consaul Place.

The properties on which the defendants made their improvement was 330 and 450 East Beaumont Avenue. The defendants submitted a proposal for the improvement of that property to the Village of Whitefish Bay prior to May 22, 1972. The proposal was accepted by the Village Board. The property had been previously rezoned after several public hearings to what is known as a District 5 Zone. According to sec. 16.08 of the Whitefish Bay Building Code this is an apartment district. The defendants then applied for a building permit authorizing construction of a condominium apartment building in accordance with proposals previously submitted by the defendants. A building permit was issued by the building inspector, David M. Weis, on October 29, 1973. Pursuant to the permit the defendants constructed the building at a cost in excess of $500,000.

Plaintiffs first objected to the building inspector concerning the location of the defendants' building in a letter of October 28, 1973. Plaintiffs made unsuccessful objections to the Whitefish Bay Board of Trustees and the Village Manager, the Board of Zoning Appeals and the Village Building Board in letters dated November 1 and November 7, 1973.

The action here was commenced on January 1, 1974 after the defendants had undertaken substantial excavation and foundation construction on their property. Plaintiffs amended their complaint twice. The third

complaint and the one before us sought injunctive relief and was filed October 9, 1974 after seventy-five to eighty percent of the building had been constructed. Plaintiffs' two previous complaints had not sought injunctive relief.

In the course of the development of their property, the defendants raised the ground level approximately three feet. The trial court found that the defendants graded the slopes so there was no substantial change in the ground level at the lot lines bordering plaintiffs' property.

The plaintiffs contend that the defendants violated sec. 16.08(1)(d)(2) of the Whitefish Bay Zoning Ordinance[2] because the defendants were given three rather

---

[2] *Applicable Whitefish Bay Zoning Ordinances.*

"16.02 *DEFINITIONS.* Certain words in this code are defined for the purposes thereof as follows: . . .

"(9) The depth of a rear yard is the minimum distance between the rear line of the building other than a building for an accessory use and the rear lot line . . .

"(12) The front line of a building is the point or line nearest the front lot line, not including uncovered porches (no part of which is more than three feet above the natural grade of the lot) steps, platforms, eaves and sills.

"(13) A front yard is an open uncovered space on the same lot with the building between the front lot line and the front line of the building, extending the full width of the lot . . .

"(23) The rear line of a building is the point or line of a building nearest the rear lot line (opposite from the front setback as shown on the front setback map) not including uncovered porches (no part of which, except railing, is more than three feet above the building grade of the lot), steps, platforms, eaves and sills.

"(24) A rear yard is an open, uncovered space on the same lot with a building between the rear lot line and the rear line of the building, extending the full width of the lot perpendicular to the side lot line. Detached accessory buildings may be placed in the rear yard. Air conditioning equipment may be placed in the area created by a building ell which projects toward the rear lot line of a one or two-family dwelling, where the distance from the side line of the main building to the side of the ell is 6 feet or more.

than two side yard setbacks of seven and one-half feet each. Plaintiffs argue that if the front of defendants' building faces south on East Beaumont Avenue then defendants are entitled to two seven and one-half foot side yard setbacks on the eastern and western sides of their property and not a third side yard setback running along the south side of plaintiffs' property parallel to East Beaumont Avenue as permitted by the Village. Plaintiffs contend that the portion of the building near their south lot line constitutes another, or second rear to the building, requiring a twenty-five foot setback.

Judge Robert Landry heard the first motion made by plaintiffs for summary judgment on their original complaint and agreed that a twenty-five foot rear yard setback was required along the plaintiffs south boundary line. He also stated, in denying their motion for summary judgment, that his determination in that respect was not *res adjudicata* at any later proceeding. Pursuant to the defendants' request, Judge Moser was later substituted for Judge Landry in the case and that substitution is also objected to by the plaintiffs in their briefs.

"(25) The side line of a building is the point or line nearest the side lot line, not including uncovered porches (no part of which is more than three feet above the natural grade of the lot) steps, platforms, eaves and sills.

"(26) A side yard is an open uncovered space on the same lot with a building or an accessory building between the side lot line and the building or accessory building, extending from the front line of the building to the rear line of the building . . .

"(30) The width of a side yard is the minimum distance between the side line of the building, other than an accessory building, and the side lot line."

"16.08(1) (d) . . . (2). *Setbacks.* Apartment buildings shall have two side yards, each at least 7½ feet in width and a rear yard at least twenty-five feet in length, except when the rear yard is adjacent to an alley in which case said rear yard shall not be less than ten feet."

The setback issue was litigated at the trial before Judge Moser who found in favor of the defendants and concluded that the defendants had not violated the zoning ordinances of the village in the construction of the condominium. The building inspector who testified at the trial interpreted 16.02(23) & (24) of the ordinance as making the southern boundary of the alley as the defendants' rear lot line and determined that the defendants' building came within the prescribed distance required by the ordinance for approach to rear lot lines. The southern boundary of plaintiffs' property was not interpreted by the building inspector as being a second rear lot line. Because the building is L-shaped it is only required to meet the standard for one rear setback.

We hold that this interpretation of the ordinance was reasonable and was properly sustained by the trial judge. The ordinance does not deal with L-shaped apartment buildings and to require that an L-shaped building under the facts here have two rear lot lines rather than a side setback, would require that we rewrite the ordinance to accomplish what the plaintiff feels the ordinance ought to require. We cannot impose greater restrictions on the use of the land than the ordinance requires and where the ordinance is silent, the interpretation allowing for the greater use of the land must be followed since zoning ordinances are in derogation of common law and are to be construed in favor of the free use of private property. *Cohen v. Dane Cty. Bd. of Adjustment,* 74 Wis.2d 87, 91, 246 N.W.2d 112 (1976).

The municipality interpreting its own ordinance, through its officers, approved the defendants' plan. Zoning ordinances are to be construed in favor of the municipality. *Heaney v. Oshkosh,* 47 Wis.2d 303, 307, 177 N.W.2d 74 (1970). The portion of the building in ques-

tion is not adjacent to the rear lot line as that term is defined in sec. 16.02(23) & (24) of the ordinance. Those sections do not require that a second rear yard requirement be read into the ordinance under the facts of this case. We conclude, therefore, with respect to side yard and rear yard requirements, that the trial court was correct in finding no violation of the ordinance in this case.

The plaintiffs argue that the defendant should not have been allowed to raise the ground level of their lot by approximately three feet, and that they should not have been allowed to designate East Beaumont Avenue as the front of their building when the pedestrian entrance is actually on North Consaul Place. There is nothing in the ordinance that forbids raising the ground level three feet, nor in designating Beaumont Avenue as the front of the building.

In their brief the plaintiffs argue that the order granting substitution of judge, entered by Judge Landry, should not have been made. However, the plaintiffs ask that this court decide all issues to avoid further proceedings. Moreover, this issue is not properly before us. The plaintiffs filed two notices of appeal, neither mentions taking an appeal from any order entered by Judge Landry.[3]

*By the Court.*—Judgment affirmed.

---

[3] "817.11. *Appeal, how taken and perfected: notice, costs* . . . (2) An appeal may embrace two or more orders and may include or omit the judgment. In such case the notice of appeal shall designate with reasonable certainty the orders appealed from, or the part of them or either of them, or of the judgment appealed from . . ."