**RESIDENTIAL MANAGEMENT SYSTEMS, INC., an Ohio Corporation, and Group Care, Inc., an Ohio Corporation, Defendants–Appellants,**

v.

**JEFFERSON COUNTY PLAN COMMISSION, Plaintiff–Appellee.**

No. 39A01–8808–CV–263.

Court of Appeals of Indiana,
First District.

Aug. 9, 1989.

Darrell M. Auxier, Jenner, Kemper & Auxier, Madison, for defendants-appellants.

Spencer J. Schnaitter, Madison, for plaintiff-appellee.

BAKER, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, Residential Management Systems, Inc. (RMS) and Group Care, Inc. (Group Care), appeal from an injunction issued to enjoin their operation of a group home for the developmentally disabled.

We reverse.

## STATEMENT OF THE FACTS

RMS, pursuant to a lease agreement with Group Care, occupies real estate owned by Group Care for the purpose of operating a residential facility for the developmentally disabled. The facility is licensed by the Community Residential Facilities Council pursuant to the authority granted by IND.CODE 16–13–21–11.

The outward appearance of the home is that of a residential family dwelling. The home is designed for eight residents. Seven residents were residing in the home at the time of the preliminary injunction hearing and an eighth resident was to be added shortly thereafter. All but one of the residents are classified as moderate to mildly mentally handicapped. The residents are selected by a screening process designed to

identify and choose those persons who will best function in a community residential facility.

In addition to the residents, there are one to three staff members employed in the home, at least one of which is always present in the home with the residents. The primary function of the staff members is to teach the residents living skills and to assist the residents in making decisions for themselves. The housekeeping, laundry and cooking duties are performed primarily by the residents with the assistance of the staff members.

All of the residents are employed at the Sandstone Workshop. They work five days a week from 8:00 a.m. to 4:00 p.m. They are transported to and from work in one van which is driven by a staff member.

Plaintiff-appellee, Jefferson County Plan Commission (Plan Commission), sought injunctive relief claiming that RMS and Group Care's use of the property as a residential facility for the developmentally disabled was in violation of a Jefferson County Zoning Ordinance. The Plan Commission claimed that the location of the home in a "R–1 Single Family Residential District" violated the local ordinance. After denying the Plan Commission's request for a preliminary injunction, the trial court subsequently held a final hearing whereupon it granted a permanent injunction enjoining the operation of the group home. RMS and Group Care now appeal.

## ISSUE

■ RMS and Group Care raise one issue for our review. It is restated as follows:

Whether a residential facility for the developmentally disabled is a permitted use of property located in a single family residential district.

## DISCUSSION AND DECISION

The State of Indiana has conferred broad power on its counties to issue zoning ordinances. IND.CODE 36–7–4–601. What the State gives, however, the State may take away. The State gives Jefferson County the power to adopt a zoning ordinance, but that power is limited by IND. CODE 16–13–21–12 which provides:

A zoning ordinance ... may not exclude a residential facility for the developmentally disabled from a residential area solely because the residential facility is a business or because the persons residing in the residential facility are not related. The residential facility may be required to meet all other zoning requirements, ordinances, and laws.

Local ordinances issued pursuant to the general power granted by the State must comply with the limitations imposed by IND.CODE 16–13–21–12. *See Field v. Area Plan Commission of Grant County, Indiana* (1981), Ind.App., 421 N.E.2d 1132, 1138 ("A zoning regulation may control the use to which real estate in particular localities may be put, but it must be within the limitations and restrictions imposed by statutory or constitutional provisions, and it must have a real and substantial relation to the public health, safety, morals, or general welfare."). Failure to comply with the state-imposed limitations renders the locally adopted ordinance invalid. *Board of Zoning Appeals of City of Plymouth v. Heyde* (1974), 160 Ind.App. 165, 310 N.E.2d 908 (local ordinance limiting mining activities held violative of state statute prohibiting such limitation).[1]

In the case at bar, the trial judge issued an injunction based on a purported violation of a local ordinance which classified the area where the group home is located as a "R–1 Single Family Residential District." *Record* at 4, 29. According to the ordinance, permitted uses of real estate in an R–1 district include "one single family dwelling." *Record* at 266. The ordinance defines a "single family dwelling" as "a detached building or portion thereof designed for or occupied exclusively by one (1) family." *Record* at 254. "Family" is defined as "An individual, or two (2) or more persons related by blood or marriage, or a group of not more than two (2) persons not related by blood or marriage, living

---

1. We recognize that the validity of the injunction and not the validity of the ordinance is the question before this court. This opinion speaks only to the validity of the injunction. The ordinance may not be interpreted so as to result in an injunction which violates the statute.

together as a single housekeeping unit in a dwelling unit." *Record* at 255.

To sustain a claim for an injunction, it is necessary to establish the existence of an ordinance and that the ordinance was violated. *DeSchamps v. Board of Zoning Appeals of the City of Kokomo* (1961), 241 Ind. 615, 174 N.E.2d 581. The trial court in the case at bar found that the Plan Commission established the existence of an ordinance. It further found that the ordinance was violated because the residents were not a "single family" under the terms of the ordinance. According to the trial court, the residents were not a single family because they were not related by blood or marriage. It is true that the residents are not related, but in all other respects they are functioning as a single household unit. We are, therefore, being asked to make distinctions among households based upon intimate or genetic relations rather than the use of the real estate. We adhere to our position in *Metropolitan Board of Zoning Appeals v. Gunn* (1985), Ind.App., 477 N.E.2d 289, that such distinctions are inappropriate.

■ Separating out the developmentally disabled based on familial relations and excluding them from a residential area is prohibited by IND.CODE 16–13–21–12. The trial court recognized the significance of IND.CODE 16–13–21–12 and its prohibition against excluding facilities for the developmentally disabled from residential neighborhoods. The trial court found, however, that the local ordinance does not conflict with the state statute because the ordinance does not exclude the facility from all residential locations designated as R–3 districts. This is not acceptable. The language of the statute is not ambiguous and, consequently, it needs no construction. *Community Hospital of Anderson and Madison County v. McKnight* (1986), Ind., 493 N.E.2d 775. It is not enough under the statute to exclude the group home from one residential location so long as an alternative location is provided elsewhere. Simply stated, it is impermissible to exclude facilities for the developmentally disabled from residential neighborhoods based on the fact the residents are not related and don't constitute a "family." [2]

Whether to grant or deny an injunction lies within the trial court's sound discretion. The court's decision will not be overturned unless it was arbitrary or amounted to an abuse of discretion. *City of Muncie v. Pizza Hut of Muncie, Inc.* (1976), 171 Ind.App. 397, 357 N.E.2d 735. The trial court issued an injunction which is against the clear purpose of a statute protecting the developmentally disabled citizens of our state. The legislative intent behind the statute is to provide the developmentally disabled with housing in a residential setting. The underlying policy of the statute is clear: to aid our developmentally disabled citizens in adapting to society outside the institutional setting and to help them become an accepted and functional part of the mainstream of our society. The goal of the statute must not be circumvented. The trial court in this case has abused its discretion by issuing an injunction in contravention of IND.CODE 16–13–21–12.

Judgment reversed and remanded with instructions to the the trial court to dissolve the injunction.

RATLIFF, C.J., and BUCHANAN, J., concur.

---

2. The Plan Commission also argues for the first time in its brief that the placement of the home exceeds the needs of Jefferson County. The Community Residential Facilities Council, pursuant to its authority under IND.CODE 16–13–21–9, determined the needs of Jefferson County to be 15 developmentally disabled persons for each 10,000 county residents. Including the eight people from the home at issue here, Jefferson County has 16 developmentally disabled persons in group homes for a general population of 30,000 people. The ratio of 16/30,000 is well within the council's guidelines of 15/10,000. The Plan Commission argues, however, that because the eight-member facility in the present case is located in a town with a population of 300 people, the formula is not met. This argument is without merit because, as the record reflects, the basis for determining the general population is the number of people in the county not the number of people in an individual town.