**Bruce AYERS, Jr., Judith N. Ayers, and People for Autistic Citizens, Inc., Appellants,**

v.

**PORTER COUNTY PLAN COMMISSION, Appellee.**

**No. 64A04–8701–CV–22.**

Court of Appeals of Indiana, Fourth District.

Oct. 5, 1989.

Glenn J. Tabor, Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, Gregory S. Reising, Gary, for appellants.

David C. Appel, Valparaiso, amicus curiae.

Brian J. Hurley, Douglas, Douglas & Douglas, Valparaiso, for appellee.

MILLER, Judge.

Bruce Ayers, Jr., Judith Ayers and People for Autistic Citizens, Inc. [hereinafter referred to collectively as Group Home] appeal the trial court's January 13, 1987 order granting the Porter County Plan Commission's [Plan Commission] Petition for Permanent Injunction. After a summary judgment proceeding, the trial court granted an injunction to the Plan Commission enjoining Group Home from operating an adult group home in a single family residential area. The Plan Commission contended and the trial court agreed that, although the ordinance contained no special exception for group homes, it was "reasonable" to require Group Home to qualify for a general special exception under language requiring such exceptions for dormatories, nursing homes, sororities, fraternities and orphanages. Group Home insisted in the trial court and claims on appeal that group homes created under IND. CODE §§ 16–13–21–1 to –18 are a permitted use in single family residential areas and are not required to seek and obtain permission under a special exception.

We agree that a group home licensed under I.C. §§ 16–13–21–1 to –18, is a permitted use in a single family residential area and, where no special exception is provided in the ordinance, it may operate in such an area as long as it complies with the provisions of the ordinance pertaining to single family residences and with state law. We further observe that state law authorizes zoning authorities to adopt a special exception for licensed adult group homes,

but whether the exception's provisions must be only regulatory in nature and, when complied with, a permit must be issued or whether the provisions, as here, permit some discretion in granting a permit[1] is a question we need not decide—as we find that there was no exception in the ordinance which applied to group homes.

FACTS[2]

Bruce Ayers and Judith Ayers own a two-story home located in an unincorporated area of Porter County. The home is located on four acres of land in a district zoned Rural Residential [RR]. In May, 1986, the Ayers leased the property to People for Autistic Citizens, Inc. [PAC] for use as a residential facility for six adult male developmentally disabled individuals. PAC is a not-for-profit corporation licensed by the Community Residential Facilities Council of the State of Indiana to maintain a group home for six adults on the Ayers' property pursuant to Ind.Code §§ 16–13–21–1 to –18.

In June, 1986, Plan Commission received a complaint which alleged PAC's operation of the home would violate the Zoning Ordinance. After two meetings between the parties, the Executive Secretary of the Plan Commission acknowledged a group home was permitted in the RR zone, but he claimed the facility should be analogized to a student dormitory, sorority or fraternity house, nursing home or orphanage. Such uses were permitted only if a special exception was obtained prior to occupancy. PAC did not apply for a special exception—instead it asserted no special exception was required under the Zoning Ordinance or, alternatively, Ind.Code § 16–13–21–12, preempted the local authority's right to require a special exception for group homes.

On September 10, 1986, Plan Commission filed an action to enjoin the use of the property as a group home, alleging Group Home's failure to apply for a special exception was a violation of the Zoning Ordinance. The Group Home filed a Motion to Dismiss pursuant to Ind.Rules of Procedure, Trial Rule 12(B)(6), which alleged in pertinent part:

3. That I.C. 16–13–21–12 specifically allows said group homes in residential areas.

4. That despite the State Statute, the Plaintiffs seek to force the Defendants to seek a special exception when none is required.

5. That no cause of action exists which would allow a local government to subvert State Statute.

On December 1, 1986, the court—after considering matters outside the pleadings—entered an Order in which the court found that I.C. § 16–13–21–12 was dispositive, and that the zoning ordinance contained no provision for group homes. The court also found it was not unreasonable for the Plan Commission to analogize the use to existing uses for which a special exception was required. The court then denied the injunction, but ordered Group Home to apply for a special exception within thirty days.

Group Home did not apply for a special exception. On January 13, 1987, Plan Commission petitioned the court for a permanent injunction. The court granted the petition on the same day and entered the following Order.

"The Court being duly advised in the premises and after reviewing plaintiff's Petition for Permanent Injunction now finds as follows:

1. The language in the ordinance before us—that the exception should be granted if the facility "will not substantially and permanently injure the appropriate use of neighboring property, and will serve the public convenience and welfare"—allows the zoning authority discretion to reject a group home if it finds the home would decrease neighboring property values or would not serve the public welfare.

2. We note the record in this case is seriously lacking in factual evidence. We will address this problem in our decision. Some of the facts given are gleaned from the parties' briefs and have no basis in the record. We have included such "facts" for the sake of clarity and as background information.

1. The Court adopts its findings as stated in the Order dated December 1, 1986.

2. The Court further finds that defendants have not complied with the Order of December 1, 1986 and,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendants be permanently enjoined from operating a group home at 723 N. 200 E. in Porter County, Indiana."[3]

## DECISION

Before reaching the substantive issue we must address some procedural issues. First, we note that the factual record in this case is virtually non-existent. The hearing on Group Home's motion to dismiss was not recorded and we ordered the trial court to certify and transmit a supplemental record pursuant to Ind.Rules of Procedure, Appellate Rule 7.2(A)(3)(c) and (C). This record revealed that Group Home stipulated paragraphs (1) through (7)[4] of Plan Commission's Amended Complaint were correct, and the trial court apparently took judicial notice of the Zoning Ordinance.[5] No other evidence was submitted.

Group Home claims its motion to dismiss was based solely on the issue of preemption and that the trial court erred in considering whether Group Home was required to seek a special exception under the Zoning Ordinance. Although an evidentiary hearing on the operation of the Group Home would have been more appropriate and would have facilitated our review, we will consider the substantive issue presented.[6] Plan Commission has not challenged the fact that Group Home is licensed as a residential facility under the provisions of I.C. § 16–13–21–1, et seq. The trial court, in its findings, held that Group Home was licensed under such statute when it held that the provisions of I.C. § 16–13–21–12 were "dispositive" of this case.

### *Exhaustion of Remedies*

Plan Commission first claims the trial court could have properly entered summary judgment in its favor because Group

---

**3.** This court stayed the injunction pending resolution of this appeal.

**4.** "1. The Plaintiff is for all times pertinent to this action the duly constituted and acting Plan Commission in and for Porter County, Indiana.

2. That at all times mentioned herein, Defendants have owned and continue to own an interest in the following described property, to-wit:
The real estate and improvements located at 723 North, County Road 200 East, Valparaiso, Indiana.
Hereinafter referred to as the 'Property'.

3. That the above described real estate is located in the unincorporated area of Porter County, Indiana and is therefore subject to the jurisdiction of Plaintiff.

4. That the property is located in a district which is zoned RR which means Rural Residential use.

5. That the rural residential district is described in the ordinance as follows:
'The rural residential zoning district is intended as a transitional zone between predominantly agricultural areas by providing for relatively large-lot residential uses within rural agricultural areas which appear to be in transition from agricultural use to residential use. It is also the intent to provide relatively large lots in this zoning district to accommodate certain agricultural uses, such as the breeding or raising of animals, which is generally incompatible with neighboring uses in a residential area. This zoning district is also intended to provide isolation of residential uses from possible incompatible effects of neighboring agricultural land in the AG zoning district by providing a rural residential setting in the district.'

6. That Defendants are operating the property as a group home for teenage and adult handicapped individuals. Some or all of these individuals attend classes and/or receive training designed to assist them in living in the least restrictive environment possible.

7. That the Porter County Zoning Ordinance does not specifically address the district in which a group home may be allowed."

**5.** The trial court did not specifically state it was taking judicial notice of the ordinance but its subsequent order implies that it did. Apparently a copy of the ordinance was presented and considered by the court by agreement of the parties.

**6.** Although Group Home does not directly challenge the sufficiency of the evidence to sustain the injunction, we note Plan Commission submitted no evidence from which the trial court could have inferred Group Home was in violation of the ordinance. The fact that the property admittedly is used as a group home, does not establish a violation of the ordinance, since there is no provision for group homes in the ordinance.

Home failed to exhaust its administrative remedies. Plan Commission argues the proper procedure to appeal the decision of the Executive Secretary requiring Group Home to apply for a special exception, was an appeal to the Board of Zoning Appeals.[7] Generally, a party must exhaust its administrative remedies before seeking relief from the courts, even if the party seeks to raise the issue as a defense, *Metropolitan Development Commission of Marion County v. I. Ching, Inc.* (1984), Ind.App., 460 N.E.2d 1236. However, *I. Ching,* is distinguishable from this case. In *I. Ching,* the defendant converted a building used as a bowling alley and lounge into a night club with dining facilities. The zoning ordinance did not permit the property to be used as a cocktail lounge or night club exclusively. I. Ching did not apply for a variance. The Metropolitan Development Commission sought to enjoin I. Ching's use of the property as a night club. As an affirmative defense, I. Ching argued the zoning ordinance was unconstitutional as applied to its property. This court held that, because I. Ching failed to apply for a variance and did not challenge the constitutionality of the ordinance before the Board of Zoning Appeals it had failed to exhaust its administrative remedies and could not raise the constitutionality issue as a defense. In *I. Ching* there was no question the defendant's use of the property was not a permitted use under the zoning ordinance, and in the absence of a variance was in violation of the ordinance.

In this case, Group Home's use of the property is a permitted use. The issue is whether a special exception is required. To sustain an injunction, the Plan Commission had the burden of proving the contents of the ordinance and a violation thereof. Group Home did not raise an affirmative defense. Had the Plan Commission carried its burden, it would have been entitled to an injunction. Here, what would have happened had Group Home applied for an exception was wholly irrelevant to the issue before the court. If it was required to apply and did not, it could be enjoined. This was a question of law for the trial judge. *DeSchamps v. Board of Zoning Appeals of the City of Kokomo* (1961), 241 Ind. 615, 174 N.E.2d 581. Thus, Plan Commission's argument on this issue is without merit.

### Statutory Preemption

■ Group Home argues that I.C. §§ 16–13–21–1 to –18 preempts a local planning authority from requiring a group home to seek and obtain a special exception. We do not agree that the statute prohibits a local planning authority from requiring a group home to obtain a special exception. At the time this case was filed, I.C. § 16–13–21–12 [8] read as follows:

Zoning ordinances adopted under IC 36–7 may not exclude a residential facility for the developmentally disabled from a residential area solely because the residential facility is a business or because the persons residing in the residential facility are not related, unless the residential facility will be located within three thousand (3,000) feet of another residential facility, as measured between lot lines. The residential facility may be

---

7. Group Home was faced with a "catch 22" situation. If it applied for a special exception, under the holding in *Children's Home of Southeastern Indiana, Inc. v. Area Planning Commission of Franklin County* (1985), Ind.App., 486 N.E.2d 1048, it would be estopped from claiming no special exception was required.

8. The statute now reads:
   Sec. 12. (a) A zoning ordinance (as defined in I.C. § 36–7–1–22) may not exclude a residential facility for the developmentally disabled from a residential area solely because the residential facility is a business or because the persons residing in the residence facility are not related. The residential facility may

be required to meet all other zoning requirements, ordinances and laws.
   (b) A zoning ordinance *may exclude* a residential facility for the developmentally disabled from a residential area if the residential facility will be located within three thousand (3,000) feet of another residential facility for the developmentally disabled, measured between lot lines. However, this subsection does not apply to a residential facility for the developmentally disabled that is located within three thousand (3,000) feet of another residential facility for the developmentally disabled on March 31, 1988. (Emphasis added.)

required to meet all other zoning requirements, ordinances, and laws.

Under the terms of the statute, a zoning authority may require a group home to apply for a special exception, and indeed could prohibit the location of such a home if it were within three thousand feet of another such facility.

■ Group Home is justifiably concerned that unsympathetic planning authorities could effectively block the location of such facilities by requiring a special exception which permits the zoning authority to deny, *in its discretion*, the location of a group home by either determining in its judgment that the home will not serve the public convenience or welfare or that it will substantially injure the use of neighboring property. Group Home does not suggest that zoning authorities are prohibited from requiring a group home to comply with regulations applicable to single family residences such as building codes and health regulations and any regulations in the state law. In other words, it claims state law deprives local zoning authorities of the discretion to prohibit group homes under the guise that such homes are somehow harmful to the public welfare or will reduce neighboring property values. However, we need not decide this issue, because we hold no special exception was required by the ordinance.[9]

**9.** A special exception—unlike a variance, a *prohibited use* which involves a deviation from legislated zoning classification—involves a *permitted use* within the zoning classification if certain criteria are satisfied. *Ash v. Rush County Board of Zoning Appeals* (1984), Ind.App., 464 N.E.2d 347; *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119. The granting of a special exception is mandatory if the criteria are satisfied, while the granting of a variance is discretionary. *Id.* However, as this court noted in *Porter County Board of Zoning Appeals v. Bolde*, (1988), Ind.App., 530 N.E.2d 1212, in discussing the same zoning ordinance involved in this case, the criteria for a variance and a special exception overlap because one of the criteria in the zoning ordinance here—that the use covered by the special exception "is consistent with the spirit, purpose and intent of this Ordinance, will not substantially and permanently injure the appropriate use of neighboring property, and will serve the public convenience and welfare"—as a practical matter allows the Board a great deal of discretion. It is the same language a planning authority, faced with opposition from neighboring property owners, and/or some evidence that a decrease in property values would occur might use to exclude group homes.

In I.C. §§ 16–13–21–1 to –18, the legislature has enacted an extensive statutory and regulatory scheme for "mainstreaming" developmentally disabled individuals into normal family environments. *Metropolitan Board of Zoning Appeals v. Gunn* (1985), Ind.App., 477 N.E.2d 289. This purpose is emphasized in I.C. § 16–13–21–10, which reads:

The state standards for licensure of residential facilities under this chapter must, to the extent feasible, assure that the residential facilities simulate a home-like atmosphere for residents. Residents must have available to them the patterns and conditions of everyday life that are as close as possible to the normal patterns and conditions of individuals who are not developmentally disabled or mentally ill.

Arguably, zoning authorities are deprived of discretion to decide if a group home can be located in a residential area based on considerations of the public welfare or the effect on neighboring property values. The reasoning in *Board of Zoning Appeals of the Town of Meridian Hills v. Schulte* (1961), 241 Ind. 339, 172 N.E.2d 39 may apply to the authority of zoning authorities to regulate group homes. In *Schulte*, a Catholic church sought to build a church, school, nuns' residence and priests' residence in a desirable suburban neighborhood consisting of expensive homes. Churches were permitted in the area only after a finding by the zoning board that "such building will, in the judgment of said Board, substantially serve the public convenience and welfare and will not substantially or permanently injure the appropriate use of neighboring property." *Id.* at 346, 172 N.E.2d at 42. This language is almost identical to the language of the special exception in the case at bar. The zoning board denied a building permit after hearing evidence from a professional appraiser and a witness from the construction industry that the neighboring property would be depreciated in value 16% to 20%. Our supreme court, in affirming the trial court's reversal of the board's decision, took judicial notice that the church and school served the public convenience and welfare and concluded that the strong public policy in favor of education and freedom of religion as reflected in the Constitutions of the United States and the State of Indiana outweighed any private interest in maintaining property values. The court stated:

Zoning ordinances must find and support their validity in the police power of the state, which can only be exercised in the general public interest of safety, health and morals. Rights to the use of private property may not be restricted except upon such basis. It was never intended that zoning laws should be used for the purpose of creating special privi-

We have determined that a local zoning authority may, within the limits imposed by statute, create a special exception for group homes. Therefore, we must consider whether the trial court properly concluded that Group Home must obtain a special exception because it is analogous to other uses for which special exceptions are required.

Group Home argues zoning ordinances must establish specific guidelines—zoning by implication or analogy is prohibited. Therefore, the trial court erred in concluding Plan Commission could properly analogize the Group Home to a dormitory, sorority or fraternity or orphanage. The Plan Commission argues and the court agreed that "[i]t is unreasonable to expect the drafters of an ordinance to be able to enumerate every use to which an owner may put his property," (Plan Commission's brief p. 15) and that the Executive Secretary has the discretion to determine how to characterize the particular use.

First, we note that the Plan Commission concedes that the proposed use is residential and that the Zoning Ordinance does not specifically address group homes. It does not argue Group Home *is* a student dormitory, sorority or fraternity, nursing home or orphanage, instead it argues the proposed use *is similar* to these uses. Specifically, the Plan commission argues Group Home is most similar to a boarding house/dormitory.[10]

Generally, zoning laws which limit the use of real property are strictly construed because they are in derogation of the common law. Therefore, such ordinances are construed to favor the free use of land and restrictions are not extended by implication. *See* 1 Ziegler, *Rathkopf's Law of Zoning and Planning* § 68. *See also, County of Maui v. Puamana Management Corp.* (1981), 2 Haw.App. 352, 631 P.2d 1215; *C. DeMasco Scrap Iron & Metal Corp. v. Zirk* (1978), 62 App.Div.2d 92, 405 N.Y.S.2d 260; *Bur v. Schwarten* (1978), 83 Wis.2d 1, 264 N.W.2d 721.

This court has adopted this principle of construction. In *Suburban Homes Corp. v. Anderson* (1970), 147 Ind.App. 419, 261 N.E.2d 376, this court held the county plan commission had no authority to condition approval of a subdivision plat on the installation of sidewalks when the ordinance only required sidewalks if the subdivision would average more than 3½ lots per gross acre

---

leges or private rights in property which result from creating an exclusive community.

\* \* \* \* \* \*

The resulting depreciation in value to certain private property as a result of the passage of a zoning ordinance which is for the general welfare, health or safety, is not a ground for unconstitutionality. C.J.S. Zoning § 37, p. 744; *Euclid, Ohio v. Amber Realty Co.*, 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Rhyne, Municipal Law, sec. 32–25, p. 891.

In the *Euclid* case above it was specifically shown that the restrictions destroyed part of the value of the owner's property, yet the showing was made that the restrictions (excluding commercial uses) were for the general welfare, safety and health. It would seem that the contrary would also be true—that if a use is shown to be without question for the good of the public and general welfare, that no owner of private property adjacent or in the neighborhood, could complain because the value of his property might be thereby depreciated to some extent, since the purpose of the zoning laws is not to protect private, personal interest, but rather to protect and promote the general public interest.

*Id.* 241 Ind. at 348–49, 172 N.E.2d at 43.

Group Home's situation appears to be analogous to that of the church in *Schulte*. The legislature has determined that group homes serve the public convenience and welfare. If zoning authorities could restrict the placement of group homes based on evidence that neighboring property values would decrease, the purpose of the statute would be defeated.

**10.** The Zoning Ordinance defines this term as: "A dwelling or part thereof, other than a hotel, motel, or restaurant, where meals and/or lodging are provided *for compensation,* for three or more *unrelated persons* where no cooking or dining facilities are provided in the individual rooms." (Our emphasis). If Plan Commission's argument could be construed to mean Group Home falls within the definition of "dormitory," Group Home cannot be excluded as a dormitory pursuant to I.C. § 16–13–21–12. The definition of dormitory is based on the fact it is, at least in part, commercial and that the residents are not related. This is precisely the type of exclusion prohibited by I.C. § 16–13–21–12. *See Residential Management Systems, Inc. v. Jefferson County Plan Commission* (1989), Ind.App., 542 N.E.2d 227.

and the subdivision's plan provided for less than 3½ lots per acre. The court stated:

> Specific guidelines should be established and followed so as to allow each individual citizen the opportunity to know that he is specifically complying with Commission standards. If he does meet Commission requirements, no more is required and the interests of all citizens are protected. Discretion, while advisable in originally formulating the standards of area development, only serves to render unpredictable and possibly inequitable the commission's decision if exercised too greatly when a plat proposal is submitted.

*Id.* at 421, 261 N.E.2d at 377.

The case before us is similar to *C. De-Masco Scrap Iron & Metal Corp., supra,* in which the New York Supreme Court, Appellate Division applied the maxim *expressio unius est exclusio alterius* in a case involving a scrap shredder. The zoning ordinance in question permitted industrial uses, but required certain named uses to apply for special permits. A scrap shredder was not included in the list of uses requiring a special permit. Therefore, the court held it was permitted as of right.

In *Metropolitan Board of Zoning Appeals of Marion County v. Shell Oil Co.* (1979), Ind.App., 182 Ind.App. 604, 395 N.E.2d 1283, a gasoline service station applied for an improvement location permit to erect two canopies over gasoline pump islands. The board denied the permit on the basis that, in its judgment, the canopies were too large. Canopies were permitted by the zoning ordinance, which contained no restrictions on size. This court held that the board could not exercise its discretion to determine the appropriate size of the canopy when it "lacked any standards whatsoever to govern its conduct." *Id.* 395 N.E.2d at 1287.

■ Under the Zoning Ordinance in question here, a single family dwelling is a permitted use in the RR district. The Zoning Ordinance defines single family dwelling as "a detached building *designed for or occupied by one family exclusively,* meeting the requirements of the one and two family dwelling code, promulgated by the Administrative Building Council of Indiana." (Our emphasis). The parties do not dispute the fact that the Ayers' property is a pre-existing building designed for one family. It falls within the definition of the ordinance. In addition, I.C. § 16–13–21–10 requires residential facilities to "simulate a home-like atmosphere for residents." The Zoning Ordinance defines "family" as: "One or more persons living as a single housekeeping unit, as distinguished from a group occupying a hotel, club, nursing home, dormitory, fraternity or sorority." Assuming Group Home has met the requirements for licensing under I.C. §§ 16–13–21–1 to –18, including the requirement of a "home-like atmosphere for residents," Group Home falls within the Zoning Ordinance's definition of family. *See Residential Management Systems, Inc. v. Jefferson County Plan Commission* (1989), Ind.App. 542 N.E.2d 227.

In *Board of Zoning Appeals of Elkhart County v. New Testament Baptist Church* (1980), Ind.App., 411 N.E.2d 681, this court held that a board of zoning appeals had no authority to consider the pros and cons of locating a church at a particular location, when a church was a permitted contingent use in the district. This court explained:

> "The Board may do no more than the ordinance gives it authority to do, and in this case, it is clear the ordinance contemplates no more than a factual inquiry to determine if regulatory provisions have been complied with."

*Id.* at 683.

■ Here, Plan Commission concedes Group Home's use of the property is a permitted residential use. It meets the zoning ordinance's definition of single family dwelling. The zoning ordinance does not require a special exception for group homes.[11] Therefore, we conclude Plan

---

11. It can be reasonably inferred that a zoning authority, by not enacting an exception for the permitted use of a group home, has determined that such use is appropriate and acceptable in a residential area and no regulations other than those required of family dwellings are neces-

Commission had no authority under the zoning ordinance to require Group Home to obtain a special exception.

We have assumed Group Home is a residential facility for the developmentally disabled as defined and regulated by I.C. §§ 16–13–21–1 to –18. However, we are aware there is no evidence in the record establishing this fact.[12] Therefore, we remand to the trial court with instructions to grant a hearing on this issue, if Plan Commission chooses to present evidence that Group Home is not such a facility. If Plan Commission is unable to present such evidence, the trial court is ordered to vacate its order granting the permanent injunction.

CHEZEM, P.J., concurring in result.

RATLIFF, C.J., concurring.

---

sary. Plan Commission, in effect, is insisting that it can adopt regulations as it goes along. It is incorrect in this case.

12. In a hearing on Group Home's petition to stay enforcement of the judgment, evidence was presented on the operation of the group home. Although there was no direct evidence that Group Home is licensed pursuant to the statute, the evidence supports such an inference.