CITY OF HAMMOND, INDIANA,
a Municipal Corporation,
Plaintiff,

v.

INDIANA'S LAST REAL ESTATE
DEVELOPMENT CORPORA-
TION, et al., Defendants.

No. 2:94–CV–244–RL–2.

United States District Court,
N.D. Indiana,
Hammond Division.

April 19, 1996.

Patrick J. Galvin, Galvin, Galvin & Leeney, Hammond, IN, Joseph Stalmack, Galvin, Stalmack and Kirschner, Hammond, IN, David W. Weigle, Hammond, IN, for plaintiff.

William J. Holloway, Daniel K. Ryan, Kevin W. Bruning, Hinshaw and Colbertson, Chicago, IL, Charles D. Brooks, Jr., Merrillville, IN, for defendants.

## ORDER

LOZANO, Judge.

This matter is before the Court on Defendant's Motion in Limine No. 1 Concerning Parcels 7 and 47 to Bar Opinion Testimony, Witnesses, Documents, Comparable Sale and Argument in the Presence of the Jury that Assumes the Legally Permitted Use on I–2 District Zoning of "Motor Vehicle Services" at the Time of Valuation Did Not Permit a Gasoline Service Station ("Defendant's Motion in Limine No. 1") filed on March 5, 1996; Plaintiff's Motion in Limine No. 1 Concerning Parcels 7 and 47 filed on March 11, 1996 ("Plaintiff's Motion in Limine No. 1"); Defendant's Motion in Limine # 2 filed on March 11, 1996; and Joint Motion for Ruling on Motions in Limine filed on March 28, 1996. For the reasons set forth below, Defendant's Motion in Limine No. 1 is **GRANTED;** Plaintiff's Motion in Limine No. 1 is **DENIED;** Defendant's Motion in Limine No. 2 is **GRANTED IN PART AND DENIED IN PART;** and the Joint Motion for Ruling on Motions in Limine is **GRANTED** by means of this order.

## BACKGROUND

Plaintiff, City of Hammond ("the City"), condemned several parcels of land belonging to Defendant, Indiana's Last Real Estate Development Corporation ("ILRED"). The date of the taking was June 20, 1994. The

remaining issue in this litigation is to determine the just compensation to which ILRED is entitled due to the taking.

Two of the parcels that belonged to IL-RED, parcels 7 and 47, were located in an I-2 district zone, a manufacturing district. The main issue in the motions before the Court is what uses are permitted in this zone. In particular, the parties disagree on whether a gasoline service station is a permitted use in I-2 zones.

*DISCUSSION*

 When awarding damages in a condemnation action, the trier of fact has to determine the fair market value of the property at the time of the taking. *S. Ind. Gas & Elec. Co. v. Gerhardt,* 241 Ind. 389, 172 N.E.2d 204, 205 (1961). The fair market value is what a willing buyer would pay to a willing seller under fair market conditions. *U.S. v. 320 Acres of Land,* 605 F.2d 762, 781 (5th Cir.1979). The factual finder may consider anything affecting the sale value of the land at the time of the taking. *320 Acres,* 605 F.2d at 811; *Gradison v. State,* 260 Ind. 688, 300 N.E.2d 67, 72 (1973).

 Just compensation is not limited to the value of the property as presently used. *320 Acres,* 605 F.2d at 781, 811. The special value of the land due to its adaptability for use in a particular business is a element that can be considered. *Gradison,* 300 N.E.2d at 73. Accordingly, the landowner in a condemnation action can show not only the value of her land as presently used, but also can introduce evidence of the potential uses to which her property can be converted. *320 Acres,* 605 F.2d at 771. Demand for potential uses affect market value because a reasonable person would purchase the property aware not only of its existing use, but also of other potential uses as well. A determination of fair market value takes into consideration the highest and most profitable use for which the property is adaptable and likely to be needed in the near future, since prospect demand for such use affects the market value of the property. *Id.* at 781.

 At issue in this litigation is whether gasoline service stations were permitted uses in parcels 7 and 47 under the City of Ham-

mond's zoning ordinance. If zoning laws do not permit a prospective use on a property, such use is speculative and should not be considered in determining the fair market value. *Id.* at 818. Just compensation must be determined in light of regulatory restrictions. *Id.* If a gasoline station was not a permitted use in those parcels under the Hammond zoning ordinances, then such use is not relevant to the determination of the fair market price of the properties in this case.

The construction of the legal significance of an ordinance is a question of law. *320 Acres,* 605 F.2d at 818–19; *Barnes v. City of Anderson,* 642 N.E.2d 1004, 1006 (Ind.Ct. App.1994); *City of Columbus Bd. of Zoning Appeals v. Big Blue,* 605 N.E.2d 188, 191 (Ind.Ct.App.1992); *Boone County Area Plan Comm'n v. Kennedy,* 560 N.E.2d 692, 696 (Ind.Ct.App.1990). The court should interpret an ordinance as a whole, giving its words their plain and ordinary meaning. *Barnes,* 642 N.E.2d at 1006; *City of Columbus Bd.,* 605 N.E.2d at 191. The presumption is that "the legislature intended that the language of the [ordinance] be applied in a logical manner consistent with its underlying goals and policy." *Barnes,* 642 N.E.2d at 1006.

 Zoning regulations that constrain the free use of real property should be construed strictly. *Barnes,* 642 N.E.2d at 1006; *Town of Merrillville Bd. of Zoning Appeals v. Public Storage, Inc.,* 568 N.E.2d 1092, 1097 (Ind. Ct.App.1991); *Ayers v. Porter County Plan Comm'n,* 544 N.E.2d 213, 219 (Ind.Ct.App. 1989). The court cannot extend zoning restrictions by implications. *Barnes,* 642 N.E.2d at 1006 (refusing to apply an ordinance prohibiting the keeping of livestock to a Vietnamese pot belly pig kept as a pet). *Town of Merrillville Bd.,* 568 N.E.2d at 1097 (refusing to interpret "public necessity" as absolute necessity, in a case evaluating the need for a public storage facility); *Ayers,* 544 N.E.2d at 219 (refusing to extend a restriction on student dormitories, nursing homes, and orphanages to a group home for autistic people because such group homes were not listed specifically in the ordinance).

The parcels in question are located in an area zoned I–2, a manufacturing district. Gasoline service stations are not listed specifically as permitted uses in that zone. *See Hammond, Ind. Zoning Ordinance ("Ordinance")* Tit. XI, sec. 2(A). However, it is not sufficient to look at the uses listed for I–2 zones, because the permitted uses for that zone include "[a]ny use permitted in the I–1 light industrial district." *Id.* at sec. 2(A)(10). Title X, section 2(A) lists the permitted uses for I–1 zones. *Hammond, Ind. Zoning Ordinance.*

The I–1 zone permitted uses include in section 2(A)(8), "Motor Vehicle Services." *Ordinance* Tit. X. Although the ordinance defines "automotive service station" and "garage, vehicle repair," it does not define "motor vehicle services." The definitions included in the ordinance read as follows:

*Automotive Service Station*—An "automotive service station" is a building or other structure or a tract of land used exclusively for the storage and sale of gasoline or other motor fuels and for any uses accessory thereto. The sale of lubricants, accessories, or supplies, the lubrication of motor vehicles, the minor adjustment or repair of motor vehicles, or the washing of motor vehicles are permitted accessory uses. A public parking lot or public parking garage is not a permitted accessory use.

Uses permissible at a filling station do not include motor vehicle sales, major mechanical and/or body work, straightening of body parts, painting, welding, storage of automobiles not in operating condition, or other work involving noise, glare, fumes, smoke or other characteristics to an extent greater than normally found in automotive service stations. An automotive service station is not a repair garage nor a body shop.

\* \* \* \* \* \*

*Garage, Vehicle, Repair*—A structure, or portion thereof designed or used for the repair, equipment, or servicing of motor vehicles, including, but not limited to, upholstery work, glass work, painting, welding, body and fender work, and major engine overhaul and transmission work, but not including motor vehicle sales.

*Ordinance* Tit. I, sec. 13. Despite being defined, it does not seem that these terms appear anywhere else in the ordinance.

Because the ordinance does not define the term "motor vehicle services," the Court should look at the plain and obvious meanings of these words. Courts in several states have found that "motor vehicle service station" is an unambiguous term that includes the sale of gasoline to automobiles. *See Value Oil Company v. Town of Irvington,* 152 N.J.Super. 354, 377 A.2d 1225, 1227 (S.C.Law Div.1977), *aff'd,* 164 N.J.Super. 419, 396 A.2d 1149 (S.C.App.Div.1978) (citing an ordinance that used the term "gasoline service station" interchangeably with "motor vehicle service station"); *V.S.H. Realty v. Zoning Hrg. Bd.,* 27 Pa.Cmwlth. 32, 365 A.2d 670, 672 (1976) (holding that the plain meaning of the term as listed in Webster's Dictionary includes the retail sale of gasoline); *Melody v. Zoning Bd. of App.,* 158 Conn. 516, 264 A.2d 572, 573 (1969) (using the term "motor vehicle service station" to include gasoline sales); *Town of Wheatland v. Esso Standard Oil,* 2 Misc.2d 784, 150 N.Y.S.2d 130, 131 (N.Y.Sup.Ct.1956) (stating that "motor vehicle service stations" are more commonly known as "gas stations"); *Bauer v. Bd. of Paterson,* 102 N.J.L. 235, 132 A. 515, 516 (1926) (holding that stations that provide motor vehicle services include those supplying only oil and gas). The Court finds these opinions persuasive. Although they are not authoritative in this Circuit and do not mandate that the Court follow their interpretation, they do present the common meaning of the term as interpreted by a variety of courts from a variety of locations.

Plaintiff tries to distinguish the cases cited above from the case at hand by noting that in this case the ordinance lists "motor vehicle service" alone, not followed by "station." The Court finds such argument disingenuous. What Plaintiff implies is that "motor vehicle service" includes gas servicing only if "station" modifies the former term. That argument is not persuasive. In any case, "station" limits not broadens, "motor vehicle service."

The City also argues that "motor vehicle service" does not include gasoline sale because the ordinance would have listed "automotive service station" among the uses if it intended to encompass gasoline sales. Plaintiff claims that "motor vehicle service" includes only those activities excluded from "automotive service stations" in the second paragraph of that definition. Plaintiff's argument fails, however, because those repair activities excluded from "automotive service stations" fall in the term defined as "garage, vehicle repair." If the ordinance meant to include only auto repair activity, it would have listed "garage, vehicle repairs."

The term "motor vehicle service" does not mean solely a gasoline filling station, or else the ordinance would have used such a term, or the term "automotive service station." Neither does it mean solely automotive repair, or else the ordinance would have used the term "garage, vehicle repair." Interpreting "motor vehicle service" plainly and unambiguously, the Court finds that the term encompasses all common servicing of vehicles, including both gasoline sale and auto repair. In interpreting the ordinance so, the Court construes the ordinance in favor of the free use of land.

This interpretation appears consistent with other terms in the ordinance. Prior to April 1994, both gasoline sales and auto repair were permitted uses in areas zoned C–4 Commercial District. These uses fell under the C–4 permitted use denominated as "automobile sales and service." *See Ordinance* Tit. IX, sec. 2(A)(2); *see also* Def.'s Exh. D. In April 1994, the City amended the zoning ordinance to make gasoline sales and auto repair conditional uses in areas zoned C–4. To implement the amendment, the City deleted "service" from the clause. Now the

only remaining permitted use in that clause is automotive sales. The ordinance now lists "gasoline sales and/or automobile service and repair" under conditions uses.[1]

While the Court applauds the effort in the amendment to clarify the ordinance language by differentiating between gasoline sales and auto repair, prior to the amendment, "automobile *service*" included gasoline sales. The Court cannot find any distinction between automobile service and motor vehicle service.[2] If automobile service included gasoline sales, then motor vehicle service also includes such use.

This is how the City apparently interpreted the term when Don Novak, the Zoning and Real Estate Manager of the City in October 1993, stated in a letter that a fuel station is a permitted use in I–2 zones under "motor vehicle service." (Def.Exh. C) In accordance with this interpretation, the City granted, prior to the taking, a permit for a gasoline station in an I–1 zone without a requiring a variance. *See* Def.'s Exh. A, pp. 63–64.

Despite this interpretation of the ordinance by a city official, prior actions by its employees do not prevent the City from enforcing the ordinance, if the ordinance never allowed gasoline stations in the I–2 zone. *See Harbour Town Assoc. v. Noblesville*, 540 N.E.2d 1283, 1286–87 (Ind.Ct.App.1989). If the ordinance did not permit gasoline stations in industrial districts, the fact that the City failed to enforce the ordinance earlier does not preclude it for enforcing the ordinance now. *See Gore v. City of Carlinville*, 9 Ill.2d 296, 137 N.E.2d 368, 371 (1956) ("Any failure of the city authorities … to enforce the terms of the ordinance does not render the ordinance void."). Nonetheless, the

---

1. This amendment affected only C–4 zones. Nothing in the language of the amendment indicates or implies that it is to have any effect on any of the other zones. *See* Def.'s Exh. D.

2. While legislative bodies are free to draft legislation as they wish, they would aid the executive enforcing the statutes and the courts interpreting them if they used clearly defined language consistently. In the Hammond ordinance, the definition section includes two definitions that refer to automobiles, neither of which is used later in the remaining of the ordinance. Instead, it in-

cludes terms that are not defined and that, when interpreting the terms for their plain meaning, appear to mean more or less the same thing, such as "automobile sales and service" (Title IX, prior to the amendment), "vehicle sales and service" (Title IX), and "motor vehicle services" (Title X). Confusing the Court further, the ordinance occasionally includes clauses repeating exactly what has been stated in a prior clause. *See, e.g., Ordinance* Tit. XI, sec. 2(B)(3) and sec. 2(B)(5).

Court finds that the actions of the City prior to April 1994 are persuasive examples of how the City previously interpreted the ordinance as permitting gas stations, rather than the alternative explanation that the City's actions before April 1994 were only failures to enforce.

After the April 1994 amendment to the C-4 zones, the City has interpreted the ordinance as not permitting gasoline stations in zones I-1 and I-2. In agreement with this interpretation, Don Thomas, the City Planner as of October 1994, wrote a memorandum stating that the City's "previous allowance of gas stations in I-1 and I-2 districts is now void." (Pl.'s Exh. D)

In September 1995, the City denied a permit to construct a gasoline station in an I-2 zone. Denying the permit requires the assumption that the station is not a permitted use. In affirming the denial of the permit, the City's Advisory Board of Zoning Appeals noted that the intended purpose of the I-2 manufacturing district is to "provide areas for development of heavy industrial sites and to protect industrial development from intrusion of non-industrial uses which could impede industrial development. These intended purposes do not encompass volume consumer gasoline retail sales, which the Board finds is not a permitted use in this high industrial zoning district." (Pl.'s Exh. B)

Defendant argues that the Court should not consider these later actions by the City in the interpretation of the ordinance because post-taking actions should not affect the determination of just compensation. However, the cases the Defendant cites in support of its argument stand only for the proposition that increases or decreases in the market value of the land caused by the project for which the land was taken should not be considered in determining the just compensation. *State v. Sovich*, 253 Ind. 224, 252 N.E.2d 582, 588 (1969). In this case there is no evidence that the decisions and actions of the City are at all related to the condemnation in this case.

■ Nonetheless, the Court does not agree with the interpretation of the ordinance as stated by the Advisory Board. An ordinance should be interpreted as written. *Bd. of Zoning Appeals v. New Testament Bible Church*, 411 N.E.2d 681, 683 (Ind.Ct. App.1980). Since "services" encompasses gasoline sales, the Board cannot say that such use is not permitted because it is not an industrial use. Although factual determinations by a municipal body are presumed correct and are only reversed upon abuse of discretion, *Boyle v. Kosciusko Co.*, 565 N.E.2d 1157, 1159-60 (Ind.Ct.App.1991), this is not a factual determination by the Board, but rather is an interpretation of the law. The Court does not find that it has to give deference to that determination.

Although it is true that I-2 zoning is concerned with protection of industrial sites, *Ordinance* Tit. XI, sec. 1, the ordinance permits in I-2 districts without conditions those uses permitted in I-1 zones. Some of those uses include commercial activity, in particular those commercial uses which are necessary to serve the needs of the people in the industrial district. *Id.* at Tit. X sec. 1. Since truck traffic is expected to be characteristic in industrial districts, then gasoline stations appear to be the type of commercial establishments that serve the needs of the industrial community.

■ Plaintiff points to other provisions of the ordinance to support its contention that gasoline stations are conditional, not permitted, uses in I-1 and I-2 zones. First it points to the language in Title X, section 1, which states that all operations should be confined to "completely enclosed buildings." Reading the full sentence shows that the requirement for enclosed buildings refers to typical industrial loading and storing operations, not to a commercial operation such as a gasoline station.[3] Next, Plaintiff points to Title X, section 2(B)(2) which lists as a conditional use outside material storage. The Court does not see how this applies to gasoline which is most often stored underground,

---

**3.** The sentence reads as follows: "Truck traffic and loading operations are expected to be characteristic of the district, however, all storage and operations would be confined to completely enclosed buildings."

not outside. Last, Plaintiff notes that Title XI, section 2(B)(5), on I–2 zones, makes conditional any use requiring the "[s]torage and handling of explosives, flammables, or potentially dangerous materials." Concern for all types of materials considered flammable would make conditional uses such as hardware stores selling paint removers, or hospitals storing large quantities of alcohol. Rather, the Court interprets this limitation in favor of free use as applying only to large industrial uses of flammable substances. In interpreting the ordinance in favor of free use of the land, the Court hesitates to limit gasoline stations in I–2 zones because of the Title XI, section 2(B)(5) clause, when the ordinance does not show concern about flammability in other zones where gasoline stations are permitted (I–1 zones and previously C–4 zones).

The Court has no doubt that the City has the authority to regulate the location of gasoline stations under its zoning ordinance, or that it has the power to declare that gasoline stations should be conditional because of the flammability of gasoline. However, the City has not done so. The ordinance that regulated parcels 7 and 47 on the day of the taking, as presented to the Court, permitted gasoline stations in I–2 zones.

Together with the motions in limine on the issue of whether I–2 zones permit gasoline stations, the parties request that the Court limit testimony and evidence. Because the Court holds that gas stations are permitted uses in I–2 zones, the Court denies Plaintiff's motion to exclude evidence that suggests that a gas station is a permitted use. "[I]f suitability for a particular use *might* reasonably affect fair market value—in the sense that a just compensation award based in part upon the potential for that use would not be invalid as a matter of law—then the evidence pertaining to that use must be admitted for consideration by a trier of fact." *320 Acres,* 605 F.2d at 817. It is for the trier of fact to decide in light of the evidence "whether the property has any additional market value because of its suitability for this use." *Id.* at 817–18.

In accordance with the legal conclusions of the Court in this order, the Court **GRANTS**

Defendant's Motion in Limine No. 1. The Court **BARS** any testimony, reports, other evidence, or comments by attorneys that state, suggest or imply that gas stations are not permitted uses in I–2 zones. The Court excludes any evidence concerning past actions by the City which are inconsistent with the conclusion of the Court on permitted uses. Such evidence is irrelevant and prejudicial.

The Court **BARS** testimony, reports, other evidence or comments by attorneys suggesting compensation awards which are based on the belief that gas stations were not permitted uses, *unless* such assumption did not affect the ultimate opinion of the appraiser as to the value of the land. If the City wants to introduce such testimony, it has the burden of proving that the assumption that gas stations were not permitted did not affect the appraisal. If the City succeeds in showing this, then the jury will be the one to decide whether potential use as a gas station is important and therefore should discredit this appraisal. "Whether or not [the expert] had taken all possible factors into account [in his appraisal], or whether or not he had arrived at the same conclusion at which another person might arrive, [goes] only to his credibility and the weight to be given to his testimony." *S. Ind. Gas & Elec. Co. v. Riley,* 260 Ind. 643, 299 N.E.2d 173, 176 (1973).

The Court will not keep Plaintiff's experts from testifying beyond the exclusions stated in the paragraph before. At this point in the case, the experts are familiar with factors which can affect the valuation of the land and the Court will permit them to testify on their knowledge. Such evidence is relevant and is not unduly prejudicial; therefore it is admissible. Fed.R.Evid. 402, 403. They cannot testify about their interpretation of the ordinance, and they cannot testify on their opinion of the value of the land if such appraisal was affected by their interpretation of the ordinance.

In its Motion in Limine No. 2, ILRED asks the Court to bar expert appraisal testimony by Stephen Kovachevich. ILRED argues that the City identified him as a witness too close to the trial date. The Court granted a continuance of this case so that the

parties could develop appraisal evidence in accordance with the conclusions of law on the zoning issue. Accordingly, the motion to bar Kovachevich's testimony is **DENIED.** For the same reason, the Court **DENIES** the motion to bar testimony by Gary DeClark or Richard McCloskey reappraising the land.

The Court **GRANTS** the motion to bar any evidence or testimony referring to the fact that the DeClark and Kovachevich were court-appointed appraisers in the case. The Court also **BARS** any reference to the compensation amount suggested by those appraisers in their report. The Court **BARS** any testimony referring to the appraisal report filed by them. *See State v. Jordan Woods, Inc.,* 248 Ind. 208, 225 N.E.2d 767, 771 (1967). This does not mean that the appraisers, if they testify, cannot refer to the matters discussed in the report, or that they cannot offer conclusions similar to those in the report. The exclusion is limited to the existence of the report itself and to the official nature of their prior involvement in this case. While Plaintiff can introduce substantive matters through those appraisers, the Court fears the jury would misinterpret the appointment by the Court or the filing of the report as the Court sanctioning the appraisers' opinions.

## CONCLUSION

For the foregoing reasons, the Joint Motion for Ruling on Motions in Limine is hereby **GRANTED.** The Defendant's Motion in Limine No. 1 is **GRANTED** and Plaintiff's Motion in Limine No. 1 is **DENIED.** Defendant's Motion in Limine No. 2 is **GRANTED IN PART AND DENIED IN PART.** The Court **GRANTS** Motion in Limine ·No. 2 bearing reference to the court-appointed appraisers and to the appraisal report filed with the Court. The Court **DENIES** the motion in limine regarding testimony by Stephen Kovachevich and reappraisal testimony by Gary DeClark and Richard McCloskey.