Bertram **HARNETT** and Frank T. Crohn, Plaintiff,

v.

**BOARD OF ZONING, SUBDIVISION AND BUILDING APPEALS and Planning Board, Defendants.**

Civ. No. 486/1971.

District Court, Virgin Islands, D. St. Croix.

Sept. 29, 1972.

Nichols & Silverlight, Christiansted, St. Croix, V. I., for plaintiff.

John A. Zebedee, Asst. Atty. Gen., St. Thomas, V. I., for defendants.

## MEMORANDUM OPINION

WARREN H. YOUNG, District Judge.

This is an appeal from a decision of the Board of Zoning, Subdivision, and Building Appeals (Board of Appeals) which affirmed the denial by the Planning Board of appellants' development plan. Appellants seek review of the decisions of those agencies on the theory that the denials were premised upon an impermissible basis: It is argued that there is no indication below as to the standards used in rejecting the development plan for an industrial park. There is merit to that argument.

The plan submitted for consideration comprehends the development of a parcel of property on Estate Mon Bijou, St. Croix, (a rectangular plot approximately 230' frontage by 940' depth) designated to be in the I–1 zone. That classification provides for warehousing, storage and light industrial uses. 29 V.I.C. § 266, Appendix I. In that section the Legislature has generally set forth the requirements for developing land zones for I-1 purposes. Any proposed development plan submitted for approval is required to indicate in an organized manner provision for such items as "buildings, parking areas, internal traffic circulation, service facilities, landscaped areas, and illustrations of typical building types." Further definition of some of the criteria is also made in that section. For example, buildings must not exceed a height of three stories and must contribute esthetically to the area; the latter requirement being more general than the former. And the provisions for landscaping must be made to protect the uses of adjoining properties and be adequately screened for public roads. *Id.* Thus some of the requirements enjoy the benefit of being more specifically defined while others are left generally vague and meaningless until applied to a particular proposal. The Legislature has left to the Boards the task of establishing standards, apparently hoping that those regulations promulgated by the boards would overcome the delegation of authority which has been painted with a broad brush. The Planning Board's discretion, however, need not be standardless or unbounded. Its actions must be confined to the context of the rule of law and policy as formulated by the Legislature for orderly growth and development of the Islands. Justice Brennan recently stated:

[f]ormulation of policy is a legislature's primary responsibility entrusted to it by the electorate, and to the extent [that that body] delegates authority under indefinite standards, this

policy-making function is passed on to other agencies, often not answerable or responsive in the same degree to the people.

United States v. Robel, 389 U.S. 258, at 276, 88 S.Ct. 419, at 430, 19 L.Ed.2d 508 (1967) (Brennan, J., concurring).

■ The Planning Board and the Board of Appeals have been given substantial powers to accept or reject development plans. In the case at hand, the Planning Board has denied approval of the plan by stating merely that there was: (1) inadequate space allowed for movement of vehicular traffic; (2) insufficient space allowed for turnaround area; (3) too narrow a width to the road; and (4) inadequate landscaping to protect the surrounding areas. It cannot be doubted that the Planning Board possesses lawful authority and broad discretion to decide the cases which come before it, but its decisions are subject to judicial review. 29 V.I.C. § 270. Its decisions must not only be lawful; they must also be lawfully made. *See, e. g.,* Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); Folkways Broadcasting Co. v. FCC, 126 U.S.App.D.C. 123, 375 F.2d 299 (1967). One essential element of a properly made decision is that it accords with previously stated, clearly articulate rules and standards. This is so because there is a tendency for regulatory systems which operate without clearly enunciated standards to be inherently irrational and arbitrary. The problems are evermore apparent when one's ability to get approval from a board, as here, cannot be predicted because no hint is ever given either prior to or after application as to when the board will give such approval and when it will withhold it. The problem is basically one inimical to ad hoc, standardless decisions. In this case, there was no indication from the Planning Board setting forth standards for

internal traffic circulation. I am of the opinion that agency attempts to control any form of behavior should be governed by standards for decision which are stated in advance and given wide circulation. *See, e.g.,* Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1965); United States v. Atkins, 323 F.2d 733, 742 (5th Cir. 1963). For due process reasons, these standards should be publicly promulgated and written precisely enough to give fair warning as to what the standards for decision will be.

■ One of the negative aspects of a standardless administrative regime is that many of its abuses may never come to light.

> [J]udicial review alone can correct only the most egregious abuses . . When administrators provide a framework for principled decision-making, the result will be to diminish the importance of judicial review by enhancing the integrity of the administrative process, and to improve the quality of judicial review sought in those cases where judicial review is sought.

Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 at 598 (1971). Fair procedures are impossible without standards to guide agency decision-making. When an agency neglects to define the standards upon which its denial of a developmental plan is based, the court is required, in the exercise of its supervisory powers, to return the matter to the agency in order that it may formulate the necessary standards.

### ORDER

For the reasons stated in the above Opinion, the decision of the Board of Appeals is reversed and the matter is remanded to the Planning Board for further proceedings consistent with the Opinion.