ERIC DUNBAR *v.* STATE OF INDIANA.

[No. 2-1073A232. Filed December 11, 1974. Rehearing denied January 14, 1975.]

*Robert E. Hughes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

WHITE, J.—Appellant was charged in a two count affidavit with carrying a pistol in violation of the 1935 Firearms Act[1] and with the offense of drawing a weapon upon a police officer while resisting or interfering with a police officer.[2] After trial by the court, he was found guilty of both charges and was sentenced to a determinate term of three (3) years on the first count and an indeterminate term of one (1) to five (5) years on the second count.

We affirm.

The evidence shows[3] that an Indianapolis Police Officer (Feltman), wearing his uniform and driving a clearly marked car, received a radio call that someone in the 2800 block of East Vermont Street had been firing a gun. He drove into an alley parallel with that street and observed appellant in the middle of that alley, behind 2830 East Vermont Street, the appellant's residence. When Feltman stopped his car near appellant, appellant took a shotgun from behind his back, pointed it at Feltman and said he was going to kill him. Feltman talked appellant into putting down the shotgun and then placed him under arrest. A subsequent search

1. IC 1971, 35-23-4, Ind. Ann. Stat. §§ 10-4734—10-4751 (Burns 1956 Repl.), since repealed and replaced by Acts of 1973, P.L. 333.

2. IC 1971, 35-21-4-2, Ind. Ann. Stat. § 10-1005a (Burns 1974 Supp.).

3. The only evidence as to the events underlying the charges against appellant is the testimony of witnesses called by the State; the defendant testified that he had no knowledge whatsoever of what may or may not have happened on the afternoon in question and did not call any witnesses to supply an alternative chronology.

of appellant revealed that he was also carrying a .22 caliber pistol for which he had no license.

Appellant's Motion to Correct Errors assigns as errors:

1. That the finding and decision of the trial court is contrary to law.

2. That the finding and decision of the court is not substantiated by or consistent with evidence.

## I.

Appellant's argument on the first point is that the State failed to prove that appellant was not in his place of abode, and therefore failed to prove that appellant violated the 1935 Firearms Act.

IC 1971, 35-23-4-3, Ind. Ann. Stat. § 10-4736 (Burns 1956 Repl.) provides:

> "No person shall carry a pistol in any vehicle or on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided."

Appellant's argument is that the above statute imposes upon the State the burden of proving that an accused was not in his place of abode at the time of the alleged offense, and that the phrase "place of abode" includes not only an accused's dwelling house but also "all the property" on which that dwelling house is situate. As applied to the case at bar, appellant argues that the State failed to prove that the property line at 2830 East Vermont Street (appellant's residence) did not run to the center of the alley behind that residence and since the evidence shows that appellant was in the alley behind his residence the State has failed to prove that appellant was not in his place of abode.

Contrary to appellant's contention, words used in a statute are to be given their customary and usual meaning unless

the context clearly requires a different meaning. *Fisher* v. *State* (1973), 156 Ind. App. 18, 294 N.E. 2d 632; IC 1971, 1-1-4-1 (Burns Code Ed., 1972).

The word "abode" is defined in *Webster's New International Dictionary* (2nd ed., unabridged, 1943) :

"Place where one continues, abides, or dwells; an abiding place; a dwelling; a habitation."

and in *The Random House Dictionary of the English Language* (unabridged, 1967) :

"A place in which one resides; dwelling; habitation; home."

Apparently the word "abode", in its usual and customary meaning, connotes the place where one resides. Inasmuch as people do not reside in public streets or alleys we conclude that the phrase "place of abode" as used in IC 1971, 35-23-4-3 (Burns § 10-4736), *supra,* does not include public streets or alleys no matter who might own the land on which those streets or alleys are situate.

Insofar as the nature of the alley is concerned, the police officer, Feltman, testified that it was a public alley and no contradictory evidence was adduced. Thus, regardless of whether it had the burden of doing so, the State did produce sufficient evidence to prove that appellant was not in his "place of abode" at the time of the offense.

## II.

Appellant's second argument is that he should not have been found guilty of drawing a weapon upon a police officer because there is some question of his mental capacity and, if he were of unsound mind, he could not have felonious intent. Appellant's argument is based on the fact that at a time long subsequent to his arrest but prior to the conclusion of his trial he was civilly committed to Central State Hospital.

Since there is no mention of the question of appellant's mental capacity in either his Motion to Correct Errors or the

Memorandum in support thereof the error (if any) is waived. Trial Rule 59(G); *McAfee* v. *State, ex rel. Stodola* (1972), 258 Ind. 677, 284 N.E.2d 778. Nevertheless we have considered the question and find no merit in appellant's contention.

The record of this case shows that slightly more than one month after the affidavit was filed against him the appellant filed a "Plea of Insanity", alleging both that he was legally insane at the time of the offense and that he lacked the capacity to participate in his defense. The trial court appointed two physicians to examine him. Subsequently a hearing was had and the court determined he was competent to participate in his own defense.

This cause was tried by the court without jury and though the actual time in the courtroom was reasonably short, the presentation of evidence took place over many months due to continuances requested by appellant.

The first day of trial was July 7, 1972, and on that date, through agreement of both the State and appellant, the State was permitted to present, out of order, evidence on the question of appellant's sanity at the time of the offense. (The record filed herein does not contain a transcript of that evidence.)

At appellant's request, the trial was continued until August 11, 1972, on which date the State presented evidence on its case in chief.

Again at appellant's request (several times renewed) the trial was continued until April 26, 1973, at which time appellant presented his evidence.

At some unspecified date between the second and third days of trial (after evidence had been heard on the issue of sanity at the time of the alleged offense) appellant was civilly committed as a "mentally ill person" to Central State Hospital by the Superior Court of Marion County, Room 6 (a court without criminal jurisdiction).

After all the evidence and argument of counsel was heard in the Criminal Court trial the judge reviewed the case, specifically mentioning the evidence heard on July 7, 1972, stating:

> "We had two hearings. We—remember we took them out of order. We had one as to comprehension on May 11, 1972, at which time two physicians, psychiatrists, testified that he had comprehension sufficient to understand the nature of the criminal action and proceedings thereon. This was at one of the hearings where we had the psychiatrist coming in. July 7, 1972. It was set for trial on that date. Right, it does go back to July 7, 1972. That was the first trial. And by the defendant's consent and the state's consent, we submitted evidence out of order on the defendant's sanity at the time of the alleged event. And their testimony in substance was that he was of sound mind at the time of the event, according to the standards set forth in *State of Indiana versus Hill,* which I do not have in front of me at this time. So we do have two issues to decide now. The first is whether he is not guilty by reason of insanity on date of alleged offense and, considering all of the evidence, I find that not to be the case. That he was sane on the date of the offense, namely, the 25th of November, 1971. . . ."

The foregoing comments, to which no exception was voiced, make clear that the finding that appellant was sane at the time the offense was committed (such finding is inherent in the finding of guilty) is based on evidence the trial court considered substantial, probative, and persuasive. Since that evidence has not been certified to us we are in no position to question its adequacy.

It has been long settled that sanity or insanity is a question of fact to be determined from the evidence by the trier of fact. *Plake* v. *State* (1890), 121 Ind. 433, 23 N.E. 273. "If there is substantial evidence of probative value sufficient to support a finding of sanity beyond a reasonable doubt, such finding will not be disturbed by [a reviewing court] on appeal." *Tomlin* v. *State* (1972), 258 Ind. 604, 606, 283 N.E.2d 363, 364.

The fact that appellant was civilly committed almost a year subsequent to the offense is, at most, a circumstance to be

considered, in determining whether defendant was legally sane at the time of the offense. (See *Marx* v. *State* [1957], 236 Ind. 455, including dissent at 464, 141 N.E.2d 126.) As previously noted, there was other substantial evidence of probative value to the effect that appellant was not legally insane at the time the offense was committed.

The judgment is affirmed.

Sullivan, P.J., concurs; Buchanan, J., concurs in result.

NOTE.—Reported at 319 N.E.2d 630.