The METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY, Indiana, Division One, F. Ross Vogelsesang, as Administrator of Planning and Zoning Department, Department of Metropolitan Development, Marion County, Indiana, and not Individually, Frank J. Russell, Chairman, Rose Mary Clarke, Secretary to said Board of Zoning Appeals, in their capacity as such officers and not Individually, Appellants (Defendants below),

v.

SHELL OIL COMPANY, a corporation, Appellee (Plaintiff below).

No. 2–878A305.

Court of Appeals of Indiana, Fourth District.

Oct. 29, 1979.

David F. Rees, Indianapolis, for appellants.

James L. Tuohy, John Q. Herrin, Wood, Tuohy, Gleason & Mercer, Indianapolis, for appellee.

MILLER, Presiding Judge.

This is an appeal by the Metropolitan Board of Zoning Appeals of Marion County, Indiana (Board), from the trial court's order directing the Board to issue Shell Oil Company (Shell) an improvement location permit. We affirm.

Shell is the owner of a gasoline service station located at 7103 N. Michigan Road, Indianapolis, Indiana. Shell filed an application for an improvement location permit to erect two canopies over two gasoline pump islands in the front yard of said real estate. Initially, the Department of Metropolitan Development (Department) denied the application on the basis that the Zoning Ordinance of Marion County (Ordinance) did not contemplate canopies of the size Shell proposed to construct. Shell appealed to the Board contending the Ordinance expressly permitted construction of canopies in the required front yard of gasoline service stations and Shell was therefore entitled as a matter of right to the issuance of a permit to erect the proposed canopies. The Board, after hearing evidence thereon, upheld the denial of the requested permit.

Shell filed a petition for certiorari in the Superior Court of Marion County for review and said court determined the Board's action was illegal and contrary to law and directed the Board to issue Shell the requested permit. Thereafter, the Board brought this appeal.

The Board raises the following issue on appeal:

Did the Board have authority to impose limitations on the size of canopies for which it would issue an improvement location permit?

The Board in its Appellant's Brief contends the Department and the Board, by reason of their expertise in land use problems, had the power and authority to construe the ordinance in question, apply their expertise and exercise their discretion in the granting or denying of improvement location permits. Hence, the Board urges, it was within their discretion to interpret the Ordinance as contemplating canopies of a size sufficient to cover pump equipment only for its protection and not those of the dimensions Shell proposed to construct. The Board makes this contention admitting there is neither specific statutory authority nor specific provision in the Ordinance granting such discretionary power in the case of issuing improvement location permits as opposed to such authority vested in them in reviewing a request for a zoning variance. However, the Board directs our attention to Ordinance No. 39–1971 from which it claims implied authority to exercise their discretion in issuing such permits.

 Ordinance No. 39–1971 provides in pertinent part as follows:

"No structure shall be located, erected, altered or repaired . . . upon any land within Marion County, Indiana, until an improvement location permit herefor has been applied for by the owner . . thereof and issued by the Metropolitan Development Commission of Marion County, Indiana.

\* \* \* \* \* \*

(N)o permit shall be issued for any structure or any use *unless the use, character and location thereof shall be in conformity with the provisions of all applicable zoning ordinances, thoroughfare ordinances and other ordinances relating to land use, including this ordinance."* [1]
(Our emphasis.)

It is well established that a municipality may require permits be obtained from some board or public officer as a prerequisite to the erection of buildings or similar structures. 101 *C.J.S. Zoning* § 219, p. 978. Statutory authority for the above quoted ordinance is found in *Ind.Code* 18–7–2–57 which provides:

---

1. *Code of Indianapolis and Marion County*, Vol.III, p. 3745–3752.

"As a part of a zoning ordinance, . . . the county council may require the procurement of an improvement location permit for the erection, alteration, or repair of any structure . . . .

If such a provision is adopted, a structure shall not be located and a permit shall not be issued *unless the use, character, and location of the structure is in conformity with the provisions of the applicable ordinances.* All such improvement location and occupancy permits shall be issued by the metropolitan planning department: Provided, That the authority to issue such permits may be delegated by the metropolitan plan commission to any city or county officer or officers."

(Our emphasis.)

In the issuance of permits the board or public official must follow the provisions of the zoning ordinance. *Application of Rea Construction Co.* (1968), 272 N.C. 715, 158 S.E.2d 887; See also: 13 *Am.Jur.2d*, Building and Construction Contracts § 8, p. 272. Where the applicant meets all the requirements of the ordinance he is entitled to the issuance of a permit as a matter of right and it may not lawfully be withheld. *Kenney v. Building Com'r of Melrose* (1943), 315 Mass. 291, 52 N.E.2d 683, 150 A.L.R. 490; *Application of Rea, supra*; See also: 13 *Am.Jur.2d, supra*; 62 *C.J.S. Municipal Corporations* § 227(3)e, p. 511.

The situation in the case before us is analogous to that presented our Supreme Court in *Knutson v. State* (1959), 239 Ind. 656, 157 N.E.2d 469. This case involved a town board's disapproval of the plat of a proposed subdivision of land within the town. The plat complied with the statutory standards for subdivisions. The town board in opposing the mandate action brought by the subdivider argued the approval or disapproval of the proposed plat was discretionary. On appeal the Court held such approval or disapproval to be a ministerial act. In so holding the Court observed: "Where . . . the town board had merely to determine that the plat conformed to specific statutory requirements, then the approval or disapproval of the plat on the basis of such fact was a ministerial act." The Court further stated:

"Under the above circumstances, it appearing that the plat of the subdivision as submitted complied with all the specific requirements of the statute, and there being no valid city ordinance in effect, which could have, but did not, prescribe further conditions precedent to the approval of the plat, it therefore became the mandatory duty of the town board to approve and accept the plat as submitted. . . ."

Here, when Shell applied for an improvement location permit the only determination to be made by the Department and, thereafter, by the Board was whether the proposed structures were in conformity with the requirements of the zoning ordinance.[2]

■ The subject real estate is located in a "C–5 General Commercial District" as defined by the Ordinance.[3] This section provides the use of required front yards shall be the same as that permitted under the "C–3 Neighborhood Commercial District" Section of the Ordinance[4] which provides, insofar as now material, as follows:

[See following illustration.]

---

2. The Board does not assert in its Appellant's Brief that the canopies in question might violate any specific provisions of the Ordinance, such as location, etc.

3. Ordinance No. 79–1976, Section 2.05B, 6, Code of Indianapolis and Marion County, Vol. III, p. 3649–3714.19.

4. Ordinance No. 79–1976, Section 2.03B, Code of Indianapolis and Marion County, Vol. III, p. 3649–3714.19.

| 6. USE OF REQUIRED YARDS | All required yards shall be landscaped, in grass and shrubbery, trees and/or hedge, or in combination with other suitable ground cover materials, *except*: |
|---|---|

a. *Required front yards may include*:

(1) Pedestrian walks, access cuts, driveways, flag poles and similar appurtenant uses.

(2) Off-street parking, gasoline service station pumps and/or *open canopies (attached or detached)*.

Provided however, a six (6) foot wide strip of the required front yard, paralleling and measured from the front lot line, and extending the full length thereof (except for walks, access cuts and driveways), shall be maintained as a landscaped portion of the front yard as required above, unless subject to the transitional yard requirements of section 2.03, B, 7.

(Our emphasis.)

---

The Ordinance is without restriction or description of the nature and/or size of canopies permitted in the required front yards of real estate in the C–3 zoning classification. The rule is well settled in Indiana that the rules of statutory construction are to be applied in construing an ordinance. *Carpenter v. Whitley County Plan Commission* (1977), Ind.App., 367 N.E.2d 1156. *Gene B. Glick Co., Inc. v. Marion Construction Corp.* (1975), 165 Ind.App. 72, 331 N.E.2d 26.

■ Thus, words not defined in a statute or ordinance must be taken in their plain, ordinary and usual sense. *Sutto v. Board of Medical Registration and Exam.* (1962) 242 Ind. 556, 180 N.E.2d 533; *Bowen v. Review Board of Ind. Emp. Sec. Div.* (1977), Ind.App., 362 N.E.2d 1178; *Dunbar v. State* (1974), 162 Ind.App. 375, 319 N.E.2d 630; See also: Ind.Code 1–1–4–1. Other jurisdictions have applied these rules of statutory construction in interpreting zoning ordinances. These courts have held that permitted use of property under a zoning classification in which the terms utilized are not otherwise defined is determined " 'according to the common and approved usages of the language.' " *Langevin v. Superintendent of Public Buildings* (1977), 5 Mass. App. 892, 369 N.E.2d 739; *Township of Abington v. Dunkin' Donuts Fran. Corp.*

(1972), 5 Pa.Cmwlth. 399, 291 A.2d 322; *Selvetti v. Building Inspector of Revere* (1969), 356 Mass. 720, 249 N.E.2d 744.

■ In the case before us the Superior Court found and the Board does not contest that the structures for which Shell sought a permit were canopies within the ordinary and usual sense of the word "canopy." [5] Therefore, we conclude the only definitive requirement of the zoning ordinance, that is, that canopies may be built in the required front yards of gasoline service stations, was met. By reason of the adoption of this standard without a further guide in the Ordinance relating to size limitations, the Department and the Board were without the discretionary power to withhold a permit on the basis of size. Neither the Department nor the Board have the authority to prohibit that which the City-County Council has expressly permitted in the Ordinance.

■ Finally, we must reject the contention of the Board that, by reason of the Board's (and the Department's) expertise in land use problems, it had the implied authority to construe the Ordinance in question, apply its expertise and exercise its discretion in granting or denying improvement location permits. Its assertion ignores the fact that nowhere in the Ordinance do standards exist to guide the Board

---

5. A canopy is defined as:

". . . any overhanging shelter or shade; a covering . . . an ornamental rooflike structure projecting from a wall or supported on pillars . . . , etc." *Webster's New International Dictionary*, Second Edition, 1959.

in applying such expertise and exercising such discretion. It was recently stated in *Podgor v. Indiana University* (1978), Ind. App. 381 N.E.2d 1274, 1283:

"In order to satisfy due process, an administrative decision must be in accord with previously stated, ascertainable standards. *Holmes v. New York City Housing Authority* (2nd Cir. 1968), 398 F.2d 262; *Barnes v. Merritt* (5th Cir. 1967), 376 F.2d 8; *Harnett v. Board of Zoning* (D.C. Virgin Islands 1972), 350 F.Supp. 1159. This requirement is to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary. The standards should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision. *Holmes v. New York City Housing Authority, supra; Barnes v. Merritt, supra; Harnett v. Board of Zoning, supra.* And finally, the standards should be readily available to those having potential contact with the administrative body. *Harnett v. Board of Zoning, supra.*"

Thus, we cannot reach the result sought by the Board. To do so, we would have to acknowledge that, acting as an administrative agency, it had the power to exercise its administrative discretion in granting or denying permits although it lacked any standards whatsoever to govern its conduct.

In view of our disposition of this case, we need not consider the Board's contention that the trial court exceeded its scope of review by substituting its discretion for that of the Board when it determined the Board's denial of the permit was illegal and contrary to law.

The judgment of the trial court is affirmed.

CHIPMAN and GARRARD, JJ., concur.