DISCOVERY HOUSE, INC., Appellant,

v.

**METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY, Indiana, Eastside Community Organization, Norton Health Care Center, Inc., Appellees.**

No. 49A02–9711–CV–739.

Court of Appeals of Indiana.

Aug. 4, 1998.

Opinion Clarifying Decision on Rehearing, Oct. 5, 1998.

Robert P. Kennedy, Greg A. Bouwer, Merrillville, for Appellant.

Stephen Neff, Office of Corporation Counsel, Indianapolis, for Metropolitan Board of Zoning Appeals.

C. Duane O'Neal, Donna Heiser Dubisky, Lewis & Kappes, P.C., Indianapolis, for Eastside Community Organization.

John H. Sharpe, Alastair J. Warr, McNamar Fearnow & McSharar, Indianapolis, for Norton Health Care Center, Inc.

**OPINION**

SULLIVAN, Judge.

Appellant, Discovery House, Inc. (Discovery House), appeals the trial court's decision upholding the determination by the Metropolitan Board of Zoning Appeals (BZA) that Discovery House's proposed real estate use as a methadone clinic did not comport with the HD–2 zoning classification.

We reverse.

Discovery House asserts essentially three issues upon appeal, which we restate as follows:

(1) Whether Discovery House's proposed methadone treatment facility constituted a permitted use under the HD–2 zoning classification.

(2) Whether the BZA's decision constitutes unlawful discrimination under Indiana civil rights law and the Americans With Disabilities Act.

(3) Whether the BZA's decision violated the equal protection clause under both the Federal and Indiana Constitutions.

Because we hold that Discovery House's proposed methadone treatment facility clearly constitutes a permitted use under the HD–2 zoning classification, we need not address whether the BZA's determination violated Indiana civil rights law and the American Disabilities Act, or the Equal Protection clauses of the United States and Indiana Constitutions.

In the fall of 1995, Discovery House instituted plans to operate a methadone treatment facility within a medical building located at 5626 East 16th Street in Indianapolis. The site in question was zoned under the HD–2 (Hospital District Two) classification. For purposes of this appeal, the critical section of the HD–2 zoning ordinance reads as follows:

"2. *PERMITTED HOSPITAL DISTRICT TWO (HD–2) USES* All uses permitted within the HD–2 District shall be subject to the Commission's approval, as included within a required site and development plan filed with, and approved by, said Commission as specified in Section 2.02, B.

\* \* \*

e. OFFICES for physicians, dentists, and other professions dealing with public health.

f. PHARMACIES; FLORISTS; CARD AND GIFT SHOPS; RESTAURANTS; UNIFORM CLOTHING STORES; AND SIMILAR CONVENIENCE AND SPECIALTY SALES AND SERVICE BUSINESSES.

g. OTHER SIMILAR HOSPITAL–RELATED OR ORIENTED USES." Record at 280. (Emphasis in original).

Discovery House sought an opinion from the Department of Metropolitan Development (DMD) as to whether it considered the operation of a methadone treatment facility to be a permitted use under the HD–2 zoning ordinance. On October 20, 1995, Edward Mitro (Mitro), Principal Planner for the DMD, in a letter to Discovery House, approved the proposed use as a methadone treatment facility. In his letter, Mitro characterized the proposed methadone treatment facility as a medical out-patient facility which he concluded was clearly permitted under the HD–2 zoning classification.

On March 28, 1996, counsel for Norton Health Care Center, Inc. (Norton), wrote to DMD, requesting they reconsider its position that a methadone treatment facility fit within the specifications of Code Section 2.02A.2, of the HD–2 zoning ordinance. On April 26, 1996, J. June Dugan responded to Norton's letter stating:

"It is our opinion that a methadone clinic is a medical use permitted by right in this building, as the building itself is properly zoned and approved for medical office uses without restriction. A methadone clinic would fall under the HD–2 District use which is 'an office for a physician, dentist or other professional dealing with the public health' . . . ." Record at 69.

On June 5, 1996, Norton and Eastside Community Organization, Inc. (ECO), pursuant to I.C. 36–7–4–918.1, filed an administrative appeal with the BZA requesting a review of the DMD's conclusion that a methadone clinic was a permitted use under the HD–2 classification.

On July 16, 1996, the BZA conducted a public hearing on the matter. Following presentation of evidence by Discovery House, Norton, ECO and other affected or interested persons,[1] the BZA, on September 17,

---

**1.** We note that several interested parties presented evidence at the hearing in support of their opposition to the placement of a methadone treatment facility at the location. The Marion County Sheriff's department opined that a methadone clinic would increase crimes in the

1996, reversed DMD's interpretation concluding that a methadone treatment facility was not a permitted use under the HD–2 classification. In its findings and conclusions, the BZA stated that:

"The MDF proposed by Discovery House will not be an office '... for physicians, dentists, and other professionals dealing with public health' as referenced in Section 3. of the HD–2 zoning ordinance. Section 3. contemplates offices of licensed professional persons or groups of professional persons (i.e., physicians, dentists, optometrists, podiatrists, etc.). Discovery House's MDF would not be an 'office of a professional'; rather, it would be a drug distribution facility. Discovery House's MDF would therefore not be a permitted use under Section e." Record at 188.

Discovery House appealed the BZA's determination by filing a Verified Petition for Writ of Certiorari on August 15, 1996 in Marion Superior Court. The trial court entered its judgment on July 22, 1997, upholding the BZA's decision.

■■■ Construction of a zoning ordinance is a question of law. *Barnes v. City of Anderson* (1994) Ind.App., 642 N.E.2d 1004, 1006. Zoning regulations which inhibit the use of real property are in derogation of the common law and are strictly construed. *Id.* We will not extend a zoning restriction by implication. *Id.* Words not defined in a statute or ordinance must be given their plain, ordinary and usual meaning. *See Metro Bd. of Zoning, Etc. v. Shell Oil Co.* (1979) 182 Ind.App. 604, 395 N.E.2d 1283, 1286.

■■ Discovery House's proposed methadone treatment facility constitutes a permitted use under the plain and unambiguous language of the HD–2 zoning ordinance. After reviewing the record, it is clear that the proposed facility's operation fits squarely under the ordinance's language permitting the use of "[o]ffices for physicians ... and other professions dealing with public health." Record at 280. Therefore, we hold the BZA erred, as a matter of law, in determining that the methadone treatment facility did not constitute a permitted use under the unambiguous terms of the HD–2 zoning ordinance.

The record reveals that the in-house staff of each Discovery House location is comprised of at least one physician, one or more registered nurse(s) or licensed practical nurse(s), and one or more registered pharmacist(s). No member of the medical staff may provide services without a doctor's orders. No facility may operate without the medical supervision and services provided by a qualified medical doctor.

Also, every Discovery House location provides the following services to virtually all patients:

"a. A medical assessment provided by a member of the Medical Staff, which is provided at every visit;

b. Comprehensive physical examinations and medical advice;

c. Laboratory analysis and evaluation of blood and urine specimens;

d. Initial medical assessment;

e. Bi-weekly individual counseling and/or bi-weekly group counseling sessions in compliance with, and often surpassing, applicable laws and regulations;

f. Tuberculosis testing;

g. HIV and Hepatitis educational sessions;

h. Methadone (if and as prescribed);

neighborhood, decrease property values, and create anxiety for residents in the neighborhood. Dr. Craig R. Johnston submitted materials stating that he believed the facility would threaten his practice. Mr. Jim Mount, a broker at Hokansen and Company who owned the building one block to the west of the proposed site, testified that the methadone clinic would cause a severe setback to the increase in the occupancy of buildings in the area. He also stated that he lived in the Irvington area, which was near the proposed site, and he did not want to subject his young daughters to this type of environment.

While this court is sympathetic to the many legitimate concerns expressed at the hearing, the issue nonetheless must remain whether, as a matter of law, Discovery House's proposed methadone treatment facility constitutes a permitted use under the unambiguous language of the HD–2 zoning ordinance. An otherwise illegal action of a Board of Zoning appeals is no less illegal merely because it receives widespread or legitimate public support.

i. Discharge and aftercare planning and referral." Record at 315.

In addition, evidence was presented that Midtown Community Mental Health Center, which is affiliated with Wishard Hospital, offers a methadone treatment program.

Appellees make basically three arguments to support their position that a methadone treatment facility does not constitute an office for physicians or other professions dealing with the public health: (1) Discovery House does not primarily provide medical care to its methadone recipients, and does not constitute a recognized profession; (2) the methadone treatment facility would not be the sole, full-time office of a physician, and therefore would not function as a "professional office" as contemplated by the HD–2 ordinance; and (3) heroin addiction does not constitute a problem dealing with the "public health". We find each of the three arguments unpersuasive.

In their first argument, Appellees contend that methadone treatment for drug-addicted individuals does not constitute medical care, and, as such, the operation of an entity providing methadone treatment is not an office for physicians or other professionals dealing with the public health. We disagree. Methadone treatment, while not a cure, is a program devised to treat the problem of heroin addiction. As such, facilities like Discovery House, which offer counseling and methadone treatments, clearly provide some level of medical care to individuals seeking help for the problem of heroin addiction.

Appellees attempt to characterize the function of methadone treatment facilities as mere drug dispensaries, completely separate and distinct from any of the more generally accepted or traditional forms of "medical care". However, while the efficacy or propriety of methadone treatment may be hotly contested in medical and public policy circles, whether such treatment plans are the most efficient, effective, or wisest form of medical treatment for the problem of heroin addiction is not an issue for judicial resolution. Rather, the issue is whether methadone treatment, as provided by Discovery House, constitutes an office for physicians or profes-

sionals dealing with the public health. The record is replete with evidence that it does.

In addition to the dispensing of methadone, Discovery House would provide medical assessments, physical examinations and medical advice, tuberculosis testing, HIV and hepatitis educational sessions, and discharge and aftercare planning. Every facility is staffed with licensed physicians. In fact, each treatment facility is precluded from dispensing methadone without a doctor on the premises.

Therefore, while Appellees maintain that the treatment of addiction through the prescribing of methadone is not a recognized profession, their mere disapproval and disdain for such method of treatment does not negate the legitimacy or professional character of the services offered by methadone treatment facilities. Finally, in addition to the prescribing and dispensing of the drug methadone, Discovery House also provides counseling for the problem of addiction. Even Appellees conceded during oral argument that offices which provide mental health counseling would most likely constitute a permitted use under the HD–2 classification. Accordingly, we find that Discovery House provides medical care to its methadone recipients.

Next, Appellees maintain that because the facility would not be the sole, full-time office of a physician, and no particular doctor would hold the facility out as his or her "office", it would not function as a "professional office" as contemplated by the HD–2 ordinance. In other words, because Discovery House would not fit within the traditional idea of a "doctor's office" where patients come to one location to seek treatment from a specific physician, the facility is not a "professional office". However, acceptance of this argument would preclude a doctor who has several offices around the city, but is never in one location at all times, from operating one of his offices in a location zoned under the HD–2 classification. We find no evidence that such a result was ever intended by the language "an office for physicians ... and other professionals dealing with public health." Record at 280.

While the Indianapolis location of Discovery House, at least initially, would not be the full-time office of the doctors staffing the facility, and Discovery House concedes that a doctor may not be on duty at all times, the actual dispensing of methadone may only occur when a licensed physician is present in the office.

More importantly, the language of the ordinance reads an "office for physicians ... and other professions", not the *sole* office of a physician or other professions. Record at 280. As such, the unambiguous language of the HD–2 ordinance clearly permits the use of an office of a professional or physician who maintains more than one office, or who is not at the office full-time. The City–County Council is always free to amend the language if its intent is to permit only physicians who work full-time, at one office location, to operate in an HD–2 zoning area.

Finally, Appellees seemed to suggest during oral argument that, because Discovery House's clients created their own problem by choosing to take drugs, the problem of heroin addiction is not a public health matter, but rather a purely private health concern. We strongly disagree. Not only is the problem of drug addiction one of this nation's largest health problems which affects individuals irrespective of economic and social status, the fact that an individual may have arguably created his condition by choosing to use heroin does not make the problem of drug addiction a purely "private" health concern. Under this reasoning, facilities which treat individuals for lung cancer caused by their voluntary choice to smoke cigarettes would not be considered an office of professionals dealing with public health. Because we doubt Appellees, or anyone else, would be willing to contend that lung cancer is not a matter of public health, we conclude, with a degree of confidence, that the widespread problem of drug addiction should be viewed similarly.

The judgment of the trial court is reversed and this matter is remanded for proceedings consistent with this opinion.

KIRSCH and BAKER, JJ., concur.

**OPINION ON REHEARING**

SULLIVAN, Judge.

Appellees, Metropolitan Board of Zoning Appeals of Marion County, Indiana, (BZA) Eastside Community Organization and Norton Health Care Center, Inc., have filed their Petition for Rehearing which, in part, asserts:

"2. The Court's opinion erroneously and materially misstates the Record as follows:

(a) 'In fact, each treatment facility is precluded from dispensing methadone without a doctor on the premises.' Opinion at page 8 [701 N.E.2d at 580]; and

(b) 'While the Indianapolis location of Discovery House, at least initially, would not be the full-time office of the doctors staffing the facility, and Discovery House concedes that a doctor may not be on duty at all times, the actual dispensing of methadone may only occur when a licensed physician is present in the office.' Opinion at page 9 [701 N.E.2d at 581].

The record has no evidence supporting these statements."

We issue this opinion upon rehearing for the purpose of clarification with regard to the factual conclusions complained of.

Mr. Paul Alexander, Executive Director of Discovery House USA in an affidavit which was before the BZA, stated:

"3. At each Discovery House location, the in-house Medical Staff is comprised of at least one Physician, one or more Registered Nurse(s) or Licensed Practical Nurse(s), and one or more Registered Pharmacist(s).

4. A qualified Physician, whose qualifications are proscribed by the laws and regulations of each of the jurisdictions in which Discovery House operates, serves as Medical Director at each Discovery House site. The supervision of a qualified Medical Director is a necessary and absolute condition for each of the Discovery House locations to open initially, and to operate on a daily basis. All other Medical Staff may provide services provided only on Doctor's Orders. Without the medical supervision and services provided by a quali-

fied Medical Director at each location, as indicated by the Medical Director's signature on each and every patient's Treatment Plan, that Discovery House must cease operations." Record at 365.

At the public hearing, he testified that "[w]ithout licensed physicians and without a nurse on the premises, we do not operate." Record at 206. Furthermore, he stated that "... methadone is available, licensed, with a physician who ... is in fact local ..." Record at 224.

The thrust of the numerous remonstrances against the methadone distribution facility was not whether a physician would be in attendance at all times but rather that the nature of the "patients" who would be visiting the facility and the distribution of the methadone as maintenance treatment constituted a threat to the community, to the schools, children, neighbors and businesses in the area. There was expression that the facility would tend to encourage an increase in crime in the area. These fears would not be materially affected by the presence of a licensed physician, nurse and/or pharmacist at the crucial times of methadone distribution.

Be that as it may, in retrospect, our conclusion in the opinion on the merits that "each treatment facility is precluded from dispensing methadone without a doctor on the premises", may be construed as an overly broad, if not erroneous interpretation of the evidence. We, nevertheless, remain of the view that Discovery House in its operation is governed by all federal and state laws and regulations concerning the distribution of prescription drugs or synthetics. Accordingly, methadone could not be legally distributed without appropriate licensed medical or pharmacy persons in attendance.

Subject to this supplement to our earlier opinion and its clarifying purpose, we deny the Petition for Rehearing.

KIRSCH and BAKER, JJ., concur.