FLYING J., INC., Appellant–Petitioner,

v.

CITY OF NEW HAVEN, BOARD OF ZONING APPEALS, Appellee–Respondent.

No. 02A03–0510–CV–492.

Court of Appeals of Indiana.

Oct. 31, 2006.

James A. Federoff, Jason M. Kuchmay, Fort Wayne, IN, Attorneys for Appellant.

David C. Van Gilder, Fort Wayne, IN, Attorney for Appellee.

**OPINION**

HOFFMAN, Senior Judge.

*STATEMENT OF THE CASE*

Appellant–Petitioner Flying J, Inc. ("Flying J") appeals the trial court's order, which denied Flying J's motion for summary judgment and granted summary judgment to the Appellee–Respondent City of New Haven Board of Zoning Appeals ("BZA") after affirming the BZA's decision that all of Flying J's proposed real estate uses were not permitted in New Haven's C–1 zoning district. We reverse and remand.

*ISSUE*

Flying J raises three issues, which we consolidate and restate as whether the trial court erred by denying Flying J's motion for summary judgment and entering summary judgment in favor of the BZA.

*FACTS AND PROCEDURAL HISTORY*

Flying J owns 53.3 acres of land in the northwest quadrant of the I–469/U.S. 30 interchange in New Haven, Indiana ("the Site"). The Site is located in an area of New Haven zoned as a "C–1 General Commercial District." Appellant's App. at 163, 217. The New Haven Zoning Code, specifically § 151.098 ("C–1 Zoning Ordinance"), explains the purpose and permitted uses of the C–1 District as follows:

(A) Purpose. The General Commercial District is established to include areas that are appropriate to all types of retail and service establishments primarily using inside display areas, which offer a complete range of goods and services to consumers.

(B) Permitted uses. All uses permitted in the C–1A District plus the following.

\* \* \* \* \* \*

(2) *Automobile service, including but not limited to the following.*

(a) *Service station,* but not including major automotive, mechanical, or body repair or refinishing.

(b) Tire and accessory store.

(c) Self-service automobile wash.

(3) Business service, including but not limited to the following.

(a) Bank[.]

(b) Travel bureau, taxi station.

\* \* \* \*

(d) Commercial office.

(4) Clothing service, including but not limited to the following.

\* \* \* \*

(c) Self-service laundry[.]

(5) Equipment service, including but not limited to the following.

\* \* \* \*

(b) Electrical appliance, radio store.

(c) Photo supply store.

\* \* \* \*

(6) Food Service, including but not limited to the following.

\* \* \* \*

(b) Bakery goods outlet.

(c) Ice cream or candy shop.

(d) Grocery, supermarket, fruit or vegetable store, meat market, delicatessen.

(e) Restaurant[.]

\* \* \* \*

(8) General retail service, including but not limited to the following.

(a) Book store, hobby shop, gift store, antique shop, and art store.

\* \* \* \*

(c) Drug store, stationery or newsdealer store, cigar store.

(d) Department store . . . notion store.

\* \* \* \*

(g) Haberdashery, ready-to-wear shop.

\* \* \* \*

(m) Variety store[.]

\* \* \* \*

(9) Amusement enterprise, including but not limited to the following.

\* \* \* \*

(b) [P]enny arcade.

\* \* \* \*

(10) Hotel, motel, private club or lodge.

\* \* \* \*

(13) *Accessory uses.*

Appellant's App. at 163–165, 227–229 (emphases added). The Zoning Ordinance defines an "accessory use" as including a "building or use subordinate to another structure or use located on the same lot and which does not change or alter the character of the premises." Appellant's App. at 161, 218.

Flying J wanted to develop 17.7 acres of the Site by building a travel plaza, in which it could "offer a wide range of amenities for both the traveling public and the professional driver in one comprehensive facility." Appellant's App. at 230. In February 2005, Flying J sought a determination from Brian Yoh, the New Haven Planning and Economic Development Director ("the Zoning Director"), as to whether its proposed uses for the travel plaza development would be permitted in the C–1 District. The proposed uses for the travel plaza development included: a convenience store; a country market; a full service, 24–hour restaurant; a fast food court; a service station with gasoline and diesel fuel dispensers for passenger cars, recreational vehicles ("RVs"), and trucks; travelers' rest facilities, including restroom, showers, laundry, TV lounge, and video games; accommodations for

business needs, including ATMs, fax capabilities, telephones, computer and internet access, and overnight delivery drop boxes; RV services, including waste tank disposal and propane refueling; and separate parking for RVs and trucks.

In response, the Zoning Director informed Flying J that some but not all of the proposed uses of the travel plaza were permitted in a C–1 District. Specifically, the Zoning Director determined that the restaurant, convenience store, country market store, food court, business services, service station, and travelers rest facilities were permitted uses in the C–1 District while the "fueling stations for tractor-trailer vehicles, service for RV's, including waste tank disposal facilities and propane at RV islands, and 24[-]hour parking for up to 11 recreational vehicles and 187 trucks at a time" were not permitted uses. Appellant's App. at 173.

Flying J then appealed the Zoning Director's determination to the BZA. Following a public hearing, the BZA agreed that the fueling stations for trucks, RV services regarding waste tank disposal and propane, and parking for RVs and trucks were not permitted uses and then issued written findings of fact, in which it approved the Zoning Director's determination. In its written opinion, the BZA indicated that the fueling stations for trucks were distinguishable from the permitted use of a service station contained in the C–1 Zoning Ordinance. The BZA also determined that the RV services of waste disposal and propane and parking for RVs and trucks were not accessory uses that would be allowed under the C–1 Zoning Ordinance.

Flying J then filed a petition for writ of certiorari with the trial court and later filed a motion for summary judgment, alleging that, as a matter of law, all of its proposed uses were permitted in a C–1

District. Following a hearing, the trial court issued an order affirming the BZA's decision that the truck fueling stations, RV services, and parking for RVs and trucks were not permitted uses under the C–1 Zoning Ordinance. The trial court's order provided, in relevant part:

[The BZA] determined that [Flying J's] proposed uses of fueling stations for tractor-trailer vehicles, service for recreational vehicles (including waste tank disposal facilities and propane at recreational vehicle islands) and 24–hour parking for up to 11 recreational vehicles and 187 trucks at a time were not permitted in the C–1 District.

Simply stated, these "rejected" uses are not specifically permitted within the C–1 Zoning District by a plain reading of the text of the ordinance. The Court is not inclined to "expand" the specific term "automobile service" to tractor-trailers and recreational vehicles. While "parking" in and of itself may be a permitted accessory use as contemplated within the C–1 District, "overnight parking" for tractor-trailers and recreational vehicles (as indicated by the evidence) is also an expansion of the terms of the ordinance beyond that which the Court determines was intended. Similarly, recreational vehicle waste disposal or propane tank refilling cannot be considered "accessories" to retail and service establishments primarily using inside display areas (as stated in the C–1 District). [The BZA's] decision is in accordance with the law, is supported by substantial evidence, and accordingly, [Flying J's] argument must fail.

Appellant's App. at 14. Thus, the trial court denied Flying J's motion for summary judgment and entered summary judgment in favor of the BZA. Flying J now appeals.

The sole issue is whether the trial court erred by denying Flying J's motion for summary judgment and entering summary judgment in favor of the BZA. When reviewing a grant or denial of summary judgment, our standard of review is the same as that used in the trial court. *Embry v. O'Bannon*, 798 N.E.2d 157, 159 (Ind. 2003). Summary judgment is appropriate only where the evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C)). Where the dispute is one of law rather than fact, our standard of review is de novo. *Id.*

 Here, the trial court denied Flying J's motion for summary judgment and entered summary judgment in favor of the BZA after affirming the BZA's decision and interpretation of the C–1 Zoning Ordinance. Flying J argues that the trial court erred by granting summary judgment because it improperly construed the C–1 Zoning Ordinance. Construction of a zoning ordinance is a question of law. *Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n*, 819 N.E.2d 55, 65 (Ind.2004). Zoning regulations that inhibit the use of real property are in derogation of the common law and are strictly construed. *Discovery House, Inc. v. Metro. Bd. of Zoning Appeals of Marion County*, 701 N.E.2d 577, 579 (Ind.Ct.App.1998), *trans. denied.* We construe a zoning ordinance to favor the free use of land and will not extend restrictions by implication. *Saurer v. Bd. of Zoning Appeals*, 629 N.E.2d 893, 898 (Ind.Ct.App.1994).

Flying J argues that the fueling stations for trucks and RVs, the RV services, and the parking for RVs and trucks are permitted uses in the C–1 District as set forth in the C–1 Zoning Ordinance. We will review each proposed use in turn.

## A. Truck and RV Fueling Stations

 A permitted use under the C–1 Zoning Ordinance includes "Automobile services, including but not limited to ... Service station[s]." Flying J proposed to build a travel plaza, which included fueling stations for cars, RVs, and trucks. The trial court acknowledged that the C–1 Zoning Ordinance allowed for service stations that would dispense fuel but concluded that a service station that contained fueling stations for trucks and RVs would not be a permitted use under the C–1 Zoning Ordinance because trucks and RVs were not specifically listed under the ordinance and because they did not fit under the definition of an "automobile."

Flying J contends that the fueling stations for trucks and RVs are a permitted use under the C–1 Zoning Ordinance because they fit under the "Automobile service" and "Service station" permitted use. We agree with Flying J.

To support its contention, Flying J relies on *City of Columbus Bd. Of Zoning Appeals v. Big Blue*, 605 N.E.2d 188, 192 (Ind.Ct.App.1992). In that case, Big Blue operated a retail store, which was a permitted use in the C–1 zoning district in which the store was located. *Big Blue*, 605 N.E.2d at 190–191. After Big Blue set out an outdoor display of garden supplies on the sidewalk, the city sought to enjoin Big Blue's outdoor display as a violation of the city's zoning ordinances. *Id.* at 190. Both parties moved for summary judgment, and the trial court granted Big Blue's motion and denied the city's motion. *Id.*

On appeal, the city argued that because the zoning ordinance did not specifically permit the use of an outdoor display, such use was prohibited. *Id.* at 191. In support of its argument, the city relied in part

on our holding in *Day v. Ryan* that "[w]hen a statute or ordinance specifies or enumerates certain items, items not specified are excluded by implication." *Id.* (quoting *Day v. Ryan*, 560 N.E.2d 77, 82 (Ind.Ct.App.1990)). We held that the facts in *Day* were distinguishable from the facts before us because the permitted use of the land in *Day* was limited to agricultural use, and the landowners in *Day* used their land for a stockyard, which was not an agricultural use and not specified in the ordinance, while Big Blue operated its business as a retail store, which was a permitted use in the applicable ordinance. The city suggested, however, that we should regulate the manner in which Big Blue operated its business under its permitted use of a retail store, and we disagreed and held that zoning ordinances must be construed to favor the free use of land. *Id.* at 191–192. Because the ordinance did not contain a prohibition of outside sales and merchandise storage, we affirmed the trial court's judgment. *Id.* at 192.

Here, like in *Big Blue*, it is undisputed that Flying J's proposed service station in its travel plaza would be a permitted use under the C–1 Zoning Ordinance.[1] The BZA contends, however, that this permitted service station use cannot be used to offer fuel to trucks and RVs because service stations are listed in the Zoning Ordinance under "Automobile services" and that automobiles do not include trucks and RVs. Flying J counters that the Zoning Ordinance does not prohibit providing fuel to trucks and RVs and that the trial court erred by construing the term "automobile" to exclude trucks and RVs because it was contrary to the free use of land.

■ The terms "automobile service" and "service station" are not defined in the ordinance. Words not defined in an ordinance must be given their plain, ordinary and usual meaning. *Discovery House*, 701 N.E.2d at 579. In determining the plain and ordinary meaning of a term, courts may use English language dictionaries as well as consider the relationship with other words and phrases. *Stewart v. City of Indianapolis*, 798 N.E.2d 863, 866 (Ind.Ct. App.2003).

An "automobile" is typically defined as a "vehicle" that usually carries passengers and has four wheels and an internal-combustion engine. *See* MERRIAM-WEBSTER'S ONLINE DICTIONARY (10th ed.) *available at* http://www.m-w.com/cgi-bin/dictionary (defining "automobile" as "a usually four-wheeled automotive vehicle designed for passenger transportation"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.), *available at* http://www. bartleby.com/61/82/A0538200.html (defining "automobile" as "[a] self-propelled passenger vehicle that usually has four wheels and an internal-combustion engine, used for land transport"); *see also* ENCARTA WORLD ENGLISH DICTIONARY, NORTH AMERICAN EDITION, *available at* http://encarta. msn.com/encnet/features/dictionary/ Dictionary Results.aspx?refid=1861587878 (defining "automobile" as "a road vehicle, usually with four wheels and powered by an internal-combustion engine, designed to carry a small number of passengers").

A "service station" is defined as "[a] retail establishment at which *motor vehicles* are refueled, serviced, and sometimes repaired." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.) *available at* http://www.bartleby.com/61/ 80/S0288000.html (emphasis added). "Mo-

---

**1.** It is also undisputed that Flying J's other proposed travel plaza uses of its restaurant, food court, store, business facilities, and trav-
elers' rest facilities would also be permitted uses under the ordinance.

tor vehicle" is defined as "a car, truck, or other road vehicle powered by an engine." ENCARTA WORLD ENGLISH DICTIONARY, NORTH AMERICAN EDITION *available at* http:// encarta.msn.com/encnet/features/ dictionary/Dictionary ʻ Results.aspx?refid=1861693863.

Under the C–1 Zoning Code, a permitted use includes a service station, which by definition, includes fueling service for cars, trucks, and other vehicles. Although the definition of "automobile" usually refers to four-wheeled passenger cars, it also refers to vehicles, which would include trucks and RVs.[2] Because we construe a zoning ordinance to favor the free use of land and will not extend restrictions by implication, *see Saurer*, 629 N.E.2d at 898, and because the C–1 Zoning Ordinance permits service stations, we conclude that a service station that includes fueling for trucks and RVs would be a permitted use in the C–1 Zoning District. Therefore, we hold the trial court erred, as a matter of law, in determining that the fueling stations for trucks and RVs did not constitute a permitted use under the C–1 zoning ordinance. *See, e.g., Big Blue*, 605 N.E.2d at 191–192; *see also McCormick v. State*, 178 Ind.App. 206, 210, 382 N.E.2d 172, 176 (1978) (holding that the term "automobile" can be construed to include a "truck") (citing BLACK'S LAW DICTIONARY (Rev. 4th ed.1968) and its definition of "truck" as "an automobile for transporting heavy loads").

### B. RV Services

■ Flying J argues that the RV services regarding waste tank disposal and propane refueling are permitted as an "accessory use" under the C–1 Zoning Ordinance. The Zoning Ordinance defines an "accessory use" as including a "building or use subordinate to another structure or use located on the same lot and which does not change or alter the character of the premises." Appellant's App. at 161, 218. The trial court concluded that the RV services were not accessory uses under the Zoning Ordinance.

Flying J contends that the RV services fall within the ordinance's definition of an accessory use because the RV services are subordinate to the other uses of the travel plaza and would not change the character of the travel plaza premises. We agree.

The designated evidence shows that the purpose of the travel plaza is to offer a place where the traveling public—whether they be in a car, truck, or RV—can obtain fuel, dine, shop, bank, and use the travelers' rest facilities. The designated evidence also reveals that there would be a separate fueling area for RVs and that the RV services would be provided at these RV fueling islands. Based on the ordinance's definition of an accessory use, we conclude that the RV services of waste tank disposal and propane refueling, which is offered to only one portion of the potential customers of the travel plaza and would be located on already existing fueling islands, is subordinate to the principal uses of travel plaza and would not change the character of the travel plaza premises. *See, e.g., Bagko Dev. Co. v. Damitz*, 640 N.E.2d 67, 71 (Ind.Ct.App.1994) (holding that the primary use of the homeowners' double lot—one of which contained their

**2.** *See* ENCARTA WORLD ENGLISH DICTIONARY, NORTH AMERICAN EDITION *available at* h ttp://encarta.msn.com/encnet/features/dictionary/Dictionary Results.aspx?refid=1861722188 (defining a "truck" as "a large vehicle for transporting goods by road"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.) *available at* http://www.bartleby.com/61/12/R0091200. html (defining a "recreational vehicle" as "[a] vehicle, such as a camper or motor home, used for traveling and recreational activities").

house and the other of which contained a baseball practice facility—was residential and that the use of the practice facility was an accessory use because it was subordinate to the primary residential use); *Boone County Area Plan Comm'n v. Kennedy*, 560 N.E.2d 692, 696–697 (Ind.Ct. App.1990) (holding that the homeowners' proposed development of a fifteen acre private skeet shooting range within a forty acre parcel on which they maintained a four bedroom country home was subordinate, and thus, an accessory use to the primary use of the subject real estate).

### C. Parking

■ Flying J argues that parking for RVs and trucks is permitted as an accessory use under the C–1 Zoning Ordinance. Again, an "accessory use" is defined as a "building or use subordinate to another structure or use located on the same lot and which does not change or alter the character of the premises." Appellant's App. at 161, 218. The trial court acknowledged that parking was a "permitted accessory use as contemplated within the C–1 District" but concluded that parking for trucks and RVs, which the trial court described as "overnight parking," was not an accessory use and was "an expansion of the terms of the ordinance beyond that which . . . was intended." *Id.* at 14.

In support of its argument, Flying J relies on *Metropolitan Bd. Of Zoning Appeals of Marion County v. Shell Oil Co.*, 182 Ind.App. 604, 395 N.E.2d 1283 (1979). In *Shell*, Shell filed an application for an improvement location permit to erect two canopies over two gasoline pump islands. *Shell*, 395 N.E.2d at 1284. The zoning ordinance permitted the construction of such canopies at gasoline service stations, but the metropolitan zoning department denied the application on the basis that the zoning ordinance did not contemplate the size of canopies that Shell proposed. *Id.* Shell appealed to the zoning board and argued that it was entitled to the permit as a matter of law because the ordinance permitted construction of canopies, and the zoning board upheld the denial of the requested permit. *Id.* Shell then filed a petition for certiorari in the trial court, which determined that the zoning board's action was contrary to law and directed the zoning board to issue the permit to Shell. *Id.*

On appeal, the zoning board argued that it had discretion to construe the ordinance as contemplating canopies of a certain size. *Id.* We disagreed and noted that a zoning board is required to follow the provisions of a zoning ordinance. *Id.* at 1285. Because the zoning ordinance at issue did not have any restriction or description regarding the size or nature of the canopies permitted, we held that the zoning board was without discretion to withhold the permit based on the size of the proposed canopy. *Id.* at 1286.

Here, the designated evidence shows that the purpose of the travel plaza is to offer a place where the traveling public—whether they be in a car, truck, or RV—can obtain fuel, dine, shop, bank, and use the traveler's rest facilities, including use of the restrooms, laundry, showers, television lounge, video games, and computer room to access the internet. The designated evidence also reveals that the travel plaza would be open twenty-four hours a day to offer the above listed services. The evidence further reveals that Flying J proposed that there be separate parking for cars and trucks as a way "[t]o maintain safety" at the travel plaza. Appellant's Appendix at 230. Neither party disputes that drivers in trucks and RVs will be among the public that would have access to the use of the restaurant, country market,

ATMs, and the numerous traveler's rest facilities.

 Based on the ordinance's definition of an accessory use, we conclude that the parking for trucks and RVs would be subordinate to the primary uses of the travel plaza and would not change the character of the travel plaza. Indeed, as the trial court acknowledged, parking would constitute an accessory use under the C–1 Zoning Ordinance. However, the trial court's construction of the ordinance to limit parking as an accessory use based upon the type of vehicle or duration of time that the vehicle would be parked in the parking space was erroneous because the Zoning Ordinance does not contain any restriction or limitation regarding the type of vehicle that can park in a parking space, the length of time that a vehicle can remain in a parking space, or the particular hours that a vehicle can be parked in the parking space. Because the trial court did not construe the Zoning Ordinance to favor the free use of land, we conclude that the trial court erred by affirming the BZA's determination that the parking for trucks and RVs would not be an accessory use under the Zoning Ordinance. *See, e.g., Shell,* 395 N.E.2d at 1285–1286; *see also Bagko,* 640 N.E.2d at 71; *Kennedy,* 560 N.E.2d at 696–697; *Keeling v. Bd. of Zoning Appeals of City of Indianapolis,* 117 Ind.App. 314, 326, 69 N.E.2d 613, 618 (1946) (holding that the right to erect a church building included a parking lot for the use of the members attending church services and church meetings). Accordingly, we hold that the trial court erred by denying Flying J's motion for summary judgment and by entering summary judgment in favor of the BZA.

### CONCLUSION

For the foregoing reasons, we reverse the trial court's grant of summary judgment to the BZA and denial of summary judgment to Flying J and remand to the trial court with instructions to enter summary judgment in favor of Flying J.

Reversed and remanded.

NAJAM, J., and MAY, J., concur.